## SWIFT VS. HART.

Where a surety for the payment of rent reserved in a lease, takes from the lessee a chattel mortgage to secure him from loss by reason of his liability as surety, and he is subsequently obliged to pay the rent due upon the lease, this divests the mortgagor of all legal property or interest in the chattels mortgaged, and the mortgagee becomes the absolute legal owner thereof. And if the same are levied on, by virtue of an execution against the mortgagor, replevin in the *cepit* might, previous to the code, be maintained by the mortgagee, or his assignee.

Whether a chattel mortgage is fraudulent in fact and void, as to creditors, for the reason that no change of possession of the property mortgaged took place at the execution of the mortgage, is a question for the jury, and not for the court, to decide; and the court will not disturb their verdict, unless it is palpably against evidence.

Swift *v.* Hart.

The re-filing of a chattel mortgage, after the expiration of a year from the time of first filing it, is effectual to protect the mortgagee, and his assigns, as against an execution creditor, whose execution is not levied until after the second filing, but is levied within a year from and after that time. JOHNSON, J. dissented.

Such second filing of a mortgage may be regarded in the light of an original filing, at the time it is done: and, in the absence of actual fraud, is good and valid as against subsequent liens. JOHNSON, J. dissented.

THIS was an action of replevin in the *cepit* for a piano forte. The plea was *non cepit*, &c. The cause was tried at the Monroe circuit in October, 1848, before Welles, justice. On the trial, the plaintiff produced in evidence a chattel mortgage, executed by Josiah Snow to John Disbrow, bearing date September 17, 1846, by which Snow mortgaged to Disbrow the piano in question, together with various other articles of personal property : conditioned that the mortgagor should pay the mortgagee, on demand, the sum of $350, and should also save the mortgagee harmless from all liability or loss by reason of his becoming surety for the mortgagor on a certain lease, to the amount of $281,25 ; and containing other provisions usual in chattel mortgages. The mortgage was filed in the office of the clerk of the county of Monroe, in the city of Rochester, on the 18th day of September, 1846, and duly assigned by Disbrow to the plaintiff on the 3d day of June, 1847. On the 1st day of February, 1848, the mortgage was again filed in the same office, with an indorsement thereon in the words and figures following : " Neither the principal and interest or any part of the within mortgage has been satisfied. Rochester, February 1, 1846. Harrison Swift." It appeared that the mortgagor, mortgagee, and the plaintiff resided in the city of Rochester at the times of the execution and the filing of said mortgage, and that the piano in question was in the city of Rochester at the same times. It also appeared that no change of possession of the property in question took place in pursuance of the mortgage, and the plaintiff gave evidence with a view of showing that the mortgage was given in good faith, for a valuable consideration, and without any intent to defraud creditors or purchasers. It also appeared that the

defendant, who was sheriff of the county of Monroe, on the 7th day of April, 1848, received an execution issued out of the supreme court in favor of Andrew D. Gale, Andrew G. Stout and Israel C. Ward, against Josiah Snow and Daniel D. Fish, directed to the sheriff of the county of Monroe, for $110,93, with directions to collect that sum with interest from December 23, 1846; by virtue of which the defendant levied upon the piano in question, about the time he received the execution. The defendant proved the judgment upon which the execution was issued, and that it was rendered upon a demand due from the defendants to the plaintiffs therein before the execution of the mortgage; and gave evidence with a view of showing that the mortgage was fraudulent in fact, and that the same was given with the intent to defraud the creditors of Snow.

Various questions were raised and decided at the trial. So far as necessary for the purpose of understanding the decision of the court, on the motion for a new trial, they are sufficiently stated in the opinion which follows. The plaintiff recovered a verdict at the circuit, which the defendant's counsel now moved to set aside, and for a new trial.

*J. D. Husbands*, for the defendant.

*Geo. F. Danforth*, for the plaintiff.

WELLES, P. J. The first question in this case, is whether replevin in the *cepit* will lie, provided there is no other objection to the plaintiff's recovery. The chattel mortgage is dated September 17th, 1846. It is conditioned to pay Disbrow, the mortgagee, $350, and to save him harmless from all liability or loss by reason of his becoming surety for Snow, the mortgagor, on a certain lease of a house, which the latter occupied, for $281,25. Disbrow testified that on the 1st day of October, 1846, he paid one quarter's rent on the lease, upon which he was surety, and on the 22d day of January, 1847, he gave his note for the remaining two quarters, which note had been since paid. This divested Snow of all legal property or interest in the chattels

Swift v. Hart.

mortgaged, who thereafter became the mere naked bailee of Disbrow. (*Burdick* v. *McVanner*, 2 *Denio*, 170, *and cases there cited.*) Upon the assignment of the mortgage by Disbrow to the plaintiff, the latter became the absolute legal owner of the property, and Snow became his bailee, as he had been that of Disbrow; and he retained no interest which could be levied upon and sold by virtue of an execution. It seems to me, therefore, a clear proposition so far as this point is involved, that the sheriff, by the levy, demanding a receiptor and advertising the property for sale, became a trespasser against Swift the owner, and that replevin in the *cepit* will lie against him. (*Hanford* v. *Artcher*, 4 *Hill*, 271. *Smith* v. *Acker*, 23 *Wend.* 653.)

The next point made by the defendant's counsel, is that the mortgage was fraudulent and void as to the creditors of Snow, for the reason that no change of possession of the property mortgaged, took place at the execution of the mortgage. The question of fraud in fact, was one for the jury, and not for the court to decide; and I am not able to perceive that their verdict is so palpably against evidence, as to justify this court in disturbing it on that ground. (*Butler* v. *Miller*, 1 *Comst.* 496. *Smith* v. *Acker*, *supra*. *Hanford* v. *Artcher*, *supra*.)

The more important question, is whether the mortgage had ceased to be a lien, as against the defendant, who is to be regarded as the agent of the plaintiffs in the execution upon which he made the levy.

The execution was received by the defendant as sheriff on the 7th day of April, 1848, returnable in sixty days. The mortgage was filed in the proper office on the 18th day of September, 1846. On the 1st day of Februry, 1848, it was re-filed with a statement of the plaintiff's interest. On the 18th of March, 1848, the mortgage was used as evidence on a trial in which the defendant was a party, and his counsel on that trial, who is also one of his counsel in this suit, testified on the trial in this, that he, the defendant, knew of its existence. The levy, by the defendant, upon the piano in question, was as late as April 7th, 1848. The question therefore arises, whether the re-filing of the mortgage, after the expiration of the year from the first

filing, is effectual to protect the mortgagee and his assigns as against an execution creditor, whose execution is not levied until after the second filing, but is levied within a year from and after that time. This question, so far as I am advised, has never been adjudicated in the courts of this state. The statute on the subject is as follows : " Every mortgage filed in pursuance of this act, shall cease to be valid as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith, after the expiration of one year from the filing thereof; unless within thirty days next preceding the expiration of the said term of one year, a true copy of said mortgage, together with a statement exhibiting the interest of the mortgagee in the property thereby claimed by him by virtue thereof, shall be again filed in the office of the clerk or register aforesaid, of the town or city where the mortgagor shall then reside." (*Sess. L. of* 1833, *ch.* 297, § 3. 2 *R. S.* 3*d ed.* 196, § 11.)

This section of the statute does not, in so many words, declare that the mortgage, if a copy is not filed, within the last month of the first year, shall forever cease to be valid as against creditors, &c. It shall cease to be valid from and after the expiration of the year. Suppose, when the year is about to expire, the mortgagee feels satisfied that he would be exposed to no risk from other creditors of the mortgagor, and withdraws the mortgage from the files of the clerk's office, and retains it in his own possession for a time. He afterwards apprehends danger from other creditors, who, he suspects, are taking measures to acquire a superior right to himself, in respect to the mortgaged property, by obtaining a judgment and execution upon it. May he not again file his mortgage before the other creditor perfects his lien, and thus secure a preference over such other creditor ? If he may not, it is only for the reason that his mortgage has been once on file. I can not perceive how that circumstance can operate to prejudice his mortgage and prevent his using it, in the same manner as if it had never been filed. The statute declares no such effect. It is as really a mortgage in the one case as the other—as much so after the expiration of the year

Swift v. Hart.

as before; and although, from the expiration of the year, it becomes dormant and invalid, as against creditors and purchasers, yet upon filing it again, it becomes revived and valid as against such creditors and purchasers, whose liens had not attached during the interval, on the same principle that an execution against personal property, which has become dormant by reason of the plaintiff's having directed proceedings to be stayed, may be afterwards revived, and receive vitality, by being set in motion by the plaintiff, so as to be effectual as against subsequent executions. Will it violate the spirit, or defeat the object, of the statute, to allow a mortgagee to revive and resuscitate the lien of his mortgage, which had become dormant as respects creditors and purchasers? The object of the statute was to prevent fraud; and with this view, the holder of the mortgage is required to file his mortgage, and thus give it publicity. The statute does not declare when it shall be filed. He may hold it in his hands, I suppose, any length of time, and then put it on file, and the lien will take effect from that time. The neglect to file the mortgage, for a great length of time, might be a circumstance to lay before the jury on the question of actual fraud, but would not, under the statute, render it void as against subsequent liens. (*Smith* v. *Acker*, 23 *Wend.* 670, *per Verplanck*, *senator*.

The fact of the mortgage having been once filed and taken off the files, is no evidence of its having been paid; and although the withdrawing it suspends the lien, it forms no ground for saying it can never be renewed. No one would contend that the lien could not be renewed by a new mortgage, duly filed; and I ask what virtue there can be in a new mortgage, superior to that of the old one. It is impossible to see how fraud would be thereby prevented, or other creditors protected. Much stress is laid upon the words of the statute, which declare that the mortgage shall *cease to be valid*, &c. unless &c.; and it is argued that they are equivalent to a declaration that the mortgage shall forever thereafter be absolutely null and void as against creditors and purchasers. Such an interpretation is a strained one, and not warranted by the ordinary and popular sense of the words. Full

effect is given to them, and I think the design and object of the legislature answered, by construing them to mean, simply, that the benefits to the mortgagee, of *such filing* of the mortgage is destroyed; that the lien, which was thereby created, is lost forever. In that case, the mortgage would *cease to be valid,* as against creditors. There would be a cessation of the mortgage, the same as if it had never been filed. But the statute nowhere declares that such cessation shall be perpetual, or forbids the creation of a new and subsequent lien, with the same mortgage, nor is such implication necessary in order to secure the accomplishment of the object and intention of the legislature.

Upon the whole, I am of the opinion that the second filing of the mortgage in this case may be regarded in the light of an original filing at that time; and, in the absence of actual fraud, was good and valid as against subsequent liens.

The case was submitted to the jury on the question of actual fraud, and of notice to the defendant of the existence of the mortgage. I am now satisfied that the question of notice was entirely immaterial, and that it only becomes material in case of subsequent purchasers and mortgagees. Nevertheless, if I am right in relation to the effect of the refiling of the mortgage, the plaintiff was entitled to recover, provided the mortgage was made in good faith, and without any intent to defraud creditors, &c. That question having been submitted to the jury, and they having found for the plaintiff, I think their verdict should be allowed to stand.

SELDEN, J. concurred.

JOHNSON, J. dissented on the question in relation to the effect of the refiling of the mortgage; holding that the mortgage had lost its lien as against the execution by virtue of which the defendant made the levy, at the expiration of one year after the first filing; and that the second filing of the mortgage did not create or revive any lien, as against creditors, &c.

New trial denied.

[MONROE GENERAL TERM, September 2, 1850. *Welles, Selden* and *Johnson,* Justices.]