Giles *v.* Lyon.

H. GRAY, J. concurred in the opinion of MULLETT, J., both [600] upon the question of fraud and in respect to the filing of the mortgage ; and he therefore also voted for reversal.

GARDINER and PAIGE, Js. concurred with MULLETT, J. upon the question of fraud, but they were of opinion that the mortgage was duly filed, and therefore they voted for affirmance.

Judgment reversed, and new trial granted.

---

GILES *vs.* LYON, adm'r, &c. *appellant,* and AYRES et al. adm'rs, &c. *respondents.*

An action commenced under the code of procedure is not an " *equity case,*" although the subject of the suit and the relief demanded were matters of exclusive equity cognizance under the former system of pleading and practice.

*Held,* therefore, that the 47th section of the amended code of 1849, authorizing the supreme court to transfer "equity cases" to the superior court of the city of New-York, applied only to suits in equity commenced under the previous system, and did not authorize the transfer of an action under the code, although such action was strictly equitable according to former distinctions.

The code of procedure has abolished all distinction between legal and equitable remedies, and blended them into one system, combining or professing to combine the principles peculiar to each.

APPEAL from the superior court of the city of New-York. Joseph Lyon, as administrator of David Lyon, deceased, claimed to be entitled to a mortgage held by the intestate in his lifetime, and commenced a suit in the supreme court against Giles, the owner of the equity of redemption, to foreclose it. Ayres and Benjamin claimed the same mortgage as administrators of Matilda, a daughter of said David Lyon, under an alledged assignment from her father to her in the lifetime of both of them ; and they served a notice on Giles not to pay the mortgage to any one but themselves. Giles thereupon, in December, 1848, commenced this suit in the supreme court under the code of pro-

[601] cedure against the said respective claimants, setting forth the facts, averring his readiness to pay the mortgage, offering to pay the money into court, and demanding that the claimants interplead each other and adjust their rights. Such other facts in the case as are material to the questions decided, are stated in the opinion of the court.

*J. T. Doyle,* for appellant.

*P. Y. Cutler,* for respondents.

GARDINER, J. The complaint in this case was in the nature of a bill of interpleader, filed by the plaintiff, against the appellant and the respondents. In October, 1849, the superior court, by their decree, determined that the action was properly brought, and that the defendants interplead. The defendants then, as it would seem from the record, immediately proceeded to introduce testimony, without any other pleadings than their respective answers in the original suit; and of course without any issue formed directly between the litigants. Upon the evidence thus given, the court gave judgment for the respondents, the executors of Mrs. Norris, against Lyon the appellant, who was the administrator de bonis non of David Lyon deceased. The appellant objects, that the superior court never acquired jurisdiction of the cause, and that the decree should consequently be reversed.

The suit was commenced in the supreme court in December, 1848, and was subsequently transferred to the superior court in the city of New-York, as appears by the pleadings, and the captions of the decrees made in the cause, in pursuance of the 47th section of the amended code of 1849. By that section, the supreme court is authorized, by order, to transfer to the superior court, all civil suits at *issue* at the passage of the act, (12th April, 1849,) that *from* and *after* the first of *May,* 1849, shall be placed *upon* the *calendar* of the supreme court in the city of New-York, and which shall be *in readiness for hearing* on *questions of law* [602] *only,* or are *equity cases.* That the cause was not in readiness for a hearing when transferred is clear; because the appel-

Giles *v.* Lyon.

lant had distinctly put in issue, by his answer to the complaint, the representative character of the respondents. That fact was indispensable to the relief sought, and must be established before there could be a decree that the defendants interplead. Again, the decree recites that the cause was heard on the pleadings, and the documentary proofs taken at the hearing in the superior court. The suit, therefore, was neither "in readiness for hearing" in the supreme court, nor did its determination involve " questions of law only."

The remaining question is, was it an equity case, within the meaning of the above section? The 69th section of the code declares, that the distinction between *actions* at law and suits in equity, and the *forms* of such actions and suits, shall be abolished; and thereafter there should be one form of action for the protection of private rights, &c. which should be denominated a " civil action." The preamble to the act declares, " that it is inexpedient that the distinction between legal and equitable remedies should be longer continued." This was the great object to be attained by those who framed and those who adopted the code; and it should be kept steadily in view by those who are called upon to interpret and apply its provisions.

The legislature by the section above quoted, sought to accomplish the object indicated in the preamble, by abolishing the formal distinction between law and equity. They were to be blended and formed into a single system, which should combine the principles peculiar to each, and be administered thereafter, through the same forms, and under the same appellation. After ordaining a new name for all proceedings to be thereafter instituted, for the redress of private grievances, the legislature could not have intended to annul their own work by another provision in the same act, and forming a part of the same system. The code took effect in July, 1848. It was amended in 1849, when the forty-seventh section was made part of it, and the whole was then adopted as a single act of legislation. The statute did not interfere with suits commenced prior to, and pending on the first of July, 1848; nor in general, with the former practice applicable to them. They were known and distinguished [603]

under the old system, as suits at law and equity cases, and they were thus designated under the new. (*Sess. Laws*, 1849, *p.* 705, § 2 ; 706, § 3.) The phrase " equity cases," therefore, occurring in the forty-seventh section, must be confined to suits in equity commenced prior to July, 1848, and then pending in the supreme court. The accumulation of causes of this character in the former court of chancery, and the embarrassed condition of the new courts, particularly those in the first district, in consequence of their transfer to them, was notorious ; and one great object in creating a new branch of the superior court was, to relieve the supreme court of that district from the burden of investigating and determining causes which were not properly their own. The forty-seventh section was designed as a remedy for the difficulty and framed accordingly. It is in terms limited to suits at *issue* at the passage of the act, of which it is a part. This in effect, would confine the operation of the provision to suits in equity, pending on the first of July, 1848, as very few cases under the new system, would have been commenced and put at issue, during the intervening period. But however this might have been, they were not " equity cases." None thus distinguished could be commenced, put at issue, or upon the calendar, after the first of July. (§ 69.) There could be no complainant ; the distinctive appellation of the prosecuting party under the old system of practice. (§ 70.) By the construction suggested, the forty-seventh section is sensible and consistent with the subsequent provisions and the general design of the statute.

On the other hand, if " equity cases," as the respondents insist, is held to include *all* suits in which the relief sought is of an equitable character, the legislature are made to confer a power upon the supreme court, by reviving a distinction and adopting a nomenclature in one section, which they had expressly abolished in another of the same statute. A repugnancy so absolute between different parts of the same system, should be avoided if possible. We think it may be, and are all of opinion that the authority of the supreme court, under [604] the forty seventh section, is limited to equity cases com-

menced under the former practice; that they consequently had not the right to divest themselves of jurisdiction in the present case, or to confer it upon another tribunal.

The judgment of the superior court must therefore be reversed, and the cause remitted to the supreme court for further proceedings.

Judgment reversed.