### Henry Woodruff v. Andrew J. Phillips.

One having a chattel mortgage on file in the City Clerk's office, took it away for a few days, and without his knowledge the Clerk made an entry in the file book that the mortgage had been delivered to the mortgagee. Held that this entry was unofficial, and did not enable one who had bought the mortgaged property to hold it against the mortgage, which had been returned to the files before his purchase was made.

A chattel mortgage properly filed is a public record, and belongs to the office; and the Clerk has no right to deliver it to the mortgagee to be taken away. If allowed to be taken from the office and afterwards returned, no second endorsement of the filing by the Clerk is necessary to make it notice thereafter under the statute.

*Heard July 19th. Decided October 21st.*

Error to Saginaw Circuit.

The action was replevin, brought by Phillips for a wagon, which had belonged to one George W. Phillips, who had mortgaged it with other property to James B. Harvey, and afterwards sold it to Moses B. Hess, who sold it to the

plaintiff below. Woodruff had become owner of the mortgage, and had taken the wagon upon it. The facts by which it was claimed that the mortgage had ceased to be a lien upon the property as against Hess and the plaintiff below, sufficiently appear by the opinion.

*Sutherland & Miller*, for plaintiff in error:

A mortgage not impeachable for fraud is good against subsequent purchasers, except so far as the statute provides. The statute requires the filing in the clerk's office in the township or city where the mortgagor resides. This requirement was strictly complied with. The taking of the mortgage from the files might suspend the benefits of the filing, so far as such filing is relied upon to show constructive notice, during the absence of the mortgage from the clerk's office, but no longer; for after the mortgage is again put upon the files, the statute . is complied with.

The mortgage on the files is the record of which persons interested are charged with notice:—*Bishop vs. Cook*, 13 *Barb*. 326—329.

The index to mortgages, though showing the names of the parties to mortgages filed, and the time of filling, affords no information as to what property is mortgaged. If consulted in the absence of the mortgage from the files, that book could give no definite information. Though it might show that the party proposing to sell had given a mortgage, and though this might be sufficient to put a party on inquiry, if he actually saw it, yet, as the mortgage is not on file, a person purchasing from the mortgagor, and not actually seeing the index, ought not to be charged with notice of the mortgage. Hence, the index is not a complete or auxiliary notice in favor of the holder of the mortgage.

The index should not, on the other hand, be regarded as operating to prejudice the rights of the holder of the

mortgage, when such index is found to contain an entry, made by the clerk, in addition to those required by the statute, of some matter of fact which the mortgage on file, if examined, would contradict.—13 *Barb.* 326 ; 31 *Me.* 73 ; 40 *Me.* 284 ; 37 *Me.* 181.

The mortgage in question was on file in the proper clerk's office when Hess and the plaintiff below examined the index, and when they purchased the property. The index showed the filing. If the minute in the index may be relied on as giving information to the public that the mortgage had been withdrawn from the files, the minute of the filing must be conceded to be equally evidence that the mortgage, so withdrawn, had existed and been filed.

The minute of the delivery of the mortgage to Harvey was extra official, and no person had a right to act upon it. If it is acted upon, the mortgage being actually on file, and not consulted, the purchaser has no right to protection.—14 *Me.* 77.

We are not obliged, however, to rely upon constructive notice, for in this case it appears that both Hess and the Plaintiff below had actual notice of the mortgage prior to their purchase.—4 *Kent,* 189 ; 1 *Hoff. Ch.* 153 ; 15 *Pet.* 93 ; 2 *Doug. Mich.* 16 ; 2 *Washb. on Real Prop.* 594 ; 7 *Blackf.* 210 ; 16 *Mass.* 406—418 ; 2 *Met.* 623.

Actual notice that such mortgage has been made is all that is necessary to negative the *bona fides* of a subsequent purchase, unless such acts of the holder can be proved as will, on the doctrine of estoppel *in pais,* prevent him from asserting the continuance of his lien.—19 *Wend.* 514 ; 3 *Mich.* 123 ; 20 *Wend.* 17 ; 17 *Wend.* 25.

*W. L. Webber,* for defendant in error:

1. Defendant in error purchased the wagon in good faith, and is entitled to the protection of the statute.

He purchased the wagon from Hess, and not from the mortgagor, and if a free and good title passed from the

mortgagor to Hess, the mortgage lien of Harvey could not be revived by the sale of the property by Hess to defendant in error:—16 *Mass.* 406; 8 *Pick.* 329.

If one places a mortgage on file, and afterwards withdraws it, he loses not only the benefit of the filing, but he gives the public to understand that his mortgage is no longer an incumbrance on the property; and although, previous to the filing, a party may have had actual notice of the mortgage and its contents, or while on file may have read it, yet if the mortgagee removes it from the file, all persons have a right to presume, from that fact, that the mortgage is discharged.

2. If the mortgage was on file, pursuant to the statute, at the time of the purchase of the wagon by defendant in error, he will be chargeable with constructive notice, whether he, in fact, knew of it or not.

That the mortgage was duly filed on the day it was made is not disputed. But in December following the mortgagee himself took it from the clerk's office, and the clerk made a memorandum of that fact on the record. Afterwards, it seems, in some way, the mortgage was again placed in the bundle of mortgages, but it was not re-filed nor re-entered, nor was any request made to the clerk, nor any fees paid for such a re-filing. We contend that, by the removal from the files and from the clerk's office, the mortgagee, by his own act, lost from that moment all the benefits given by the statute—and could only again place himself in a position to be protected by re-filng his mortgage *de novo*. Was it re-filed? That it, by some means, was a few days afterwards slipped into the bundle, is not disputed. But this is not a compliance with the statute. The statute not only says that the mortgage shall be *filed*, but it defines what shall constitute that *filing*—§§ 3192 and 3193.

That "noting in the book" is a part of the record, and that the public may rely on examination of the book alone, see 22 *Me.* 560.

That inquiries of the clerk who has charge of the files and records of the office, are proper, and are contemplated by the statute, see *Comp. L.* § 3197; 13 *Pet.* 434.

When *Bishop v. Cook* arose, the N. Y. statute required no index book except in the cities of New York, Albany and Rochester.

MANNING J.:

The statute requires the mortgage, or a true copy thereof, to be filed in the office of the township or city clerk of the township or city in which the mortgagor resides: *Comp. L.* § 3191. And it makes it the duty of the township or city clerk, on the payment of his fee, to indorse thereon the time of receiving the same, and to deposit such instrument or copy in his office, to be kept for the inspection of all persons interested: § 3192. He is also required to write in a book to be provided by him for that purpose, the names of all the parties to such instrument, arranging the names of the mortgagors alphabetically, and to note therein the time of filing each instrument or copy: § 3193. The mortgage is to cease to be valid as against the creditors of the mortgagor, and subsequent purchasers and mortgagees in good faith, after the expiration of one year from the filing thereof, unless within thirty days next preceding the expiration of the year, the mortgagee, his agent or attorney, shall make and annex to the instrument or copy on file an affidavit setting forth the interest the mortgagee continues to have by virtue of said mortgage in the property therein mentioned, &c.

The mortgage in question was duly filed on the first day of November 1860, at which time all of the requirements of the statute appear to have been complied with. On 15th December following, Harvey, the mortgagee, applied to the clerk for the mortgage, who handed it to him, and

he took it away, and the clerk made the following entry opposite the names of the mortgagor and mortgagee and the entry of the filing of the mortgage in the book required to be kept by him for that purpose, viz: "This mortgage delivered up to James B. Harvey." The mortgage was afterwards returned. On the 17th of the same month Harvey again applied for the mortgage. It was handed to him, and he again took it from the office, and in about twenty minutes returned it, after having released all the property mentioned in the mortgage except the wagon in question. On the 9th March 1861, some two or three days before Hess purchased the wagon of G. W. Phillips, the mortgagor, and sold it to A. J. Phillips, the defendant in error, he and A. J. Phillips called at the office of the clerk and inquired if there was a chattel mortgage on file from G. W. Phillips. The clerk informed them that there had been such a mortgage on file, but that it had been taken away by Harvey. Hess replied he was not satisfied with that, and that he wished to look at the record of chattel mortgages and see for himself. The clerk thereupon exhibited the book containing the names of the mortgagor and mortgagee, and the aforesaid entry made by him when the mortgage was first delivered to Harvey. No further search was made for the mortgage, which at the time was with other mortgages on file in the office. There is no evidence Harvey had any knowledge of the memorandum.

Hess and the defendant in error acted on a memorandum made by the clerk, without authority of law, or the knowledge or assent of Harvey. It may be hard the defendant in error, under such circumstances, should lose the wagon. But it would be equally hard to visit the accidental consequences of an unofficial act of the clerk on Harvey, who had done all the law required, and all an honest man could do, to secure his property. Why should he suffer for an unauthorized memorandum or entry of the clerk? He had no knowledge of it, and the clerk was

10 MICH.—G2.

not authorized by law to make it.   A man cannot be deprived of his rights against law without his consent.   All are chargeable with a knowledge of the law, and if the defendant acted in ignorance of it, the consequences must fall upon himself.   The memorandum was no safer basis of action than the information previously given by the clerk. Having refused to rely on the latter, it is a little strange he should have given credence to the former when the file of mortgages was within his reach.

But it is objected that in taking the mortgage from the clerk's office, and afterwards returning it without re-filing it — that is, without the clerk's endorsing upon it the time of its return as an original filing, and entering anew the names of the parties and the time of re-filing in the book of mortgagors and mortgagees — the benefit of the statute was lost, for a want of compliance with its provisions.

The objection is more specious than sound.   It assumes what is not true in fact, that the same mortgage may be filed more than once, and of course any number of times. The statute makes no provision for more than one filing, but in express terms provides that the mortgage shall cease to be valid as to creditors and subsequent purchasers and mortgagees in one year from the filing, unless an affidavit is made and annexed to the mortgage, stating the mortgagee's interest in the property, within thirty days next preceding the expiration of the year. If the mortgage could be withdrawn and filed anew, there would be no occasion for the affidavit: and the law requiring it to be made and annexed to the mortgage, to continue the benefit of the statute beyond the year, could be easily evaded.

The clerk had no business, after the mortgage had been properly filed, to re-deliver it to Harvey.   The law provides for certified copies, but makes no provision whatever for the clerk to part with the instrument itself to any one.   It is a public record, and belongs to the office.

If defendant had called to see the mortgage while it was out of the office, or if Harvey had given his assent to the memorandum that misled defendant, the case would so far differ from the one before us as possibly to require a different decision. We however give no opinion on that point, as it is not before us.

The judgment must be reversed, and judgment on the facts found by the Court be entered for the plaintiff in error, with costs in both Courts.

MARTIN CH. J. and CAMPBELL J. concurred.

CHRISTIANCY J.:

I concur in the result at which my brethren have arrived, but I place my concurrence upon the single ground that Hess had no right to rely on the verbal information of the clerk, nor upon the memorandum of the delivery of the mortgage, entered in the index; but was bound to examine the files. The names of the mortgagor and mortgagee had been properly entered in the book kept for that purpose when the mortgage was filed. This was an official entry, required by the statute, and it still remained there. The memorandum of its delivery to the mortgagee, entered opposite the names, was not required by the statute, and was but a private memorandum to enable the clerk to account for its absence: the purchaser therefore had no right to rely upon this, but only upon the original entry and the files.

I am not satisfied that a mortgagee has not the right at any time to take the chattel mortgage from the files and keep it himself, if he choose to run the risk of losing his security, as against subsequent purchasers and encumbrancers. The statute makes the mortgage constructive notice to purchasers &c., only in case the mortgagee shall file it. The filing therefore can only operate in his favor, and I can see no reason why he may not at any time

renounce this benefit by withdrawing the mortgage from the files. But this is a point not involved in the case.

*Judgment reversed.*