## SWIFT vs. HALL.

*Chattel Mortgage: Temporary absence from files — Attachment of goods.*

Where the holder of a chattel mortgage sent a person to the town clerk's office to see if it was on file, and the agent, misunderstanding his instructions, withdrew the mortgage and took it to his principal, who with due diligence caused it to be re-filed, the lien thereof remained as against one who, with knowledge of the facts, attached the property while the mortgage was absent from the files.

APPEAL from the Circuit Court for *Rock* County.

The plaintiff *Swift* had a chattel mortgage, given by one Page, and on the 18th of February, 1867, asked one Head to file it in the town clerk's office. Head read it, and filed it the next day at 10 A. M. About noon of the same day, *Swift* sent his son to the clerk's office to see if the mortgage was on file, telling him if it was not on file to get it from Head and file it; and the son, misunderstanding his instructions, told the clerk that his father wanted the mortgage, and brought it back with him. *Swift* told his son that he had done wrong in taking the mortgage away; that he wished it to remain in the clerk's office. He afterward handed the mortgage to a Mr. Coon, who had to pass by the clerk's office, and who promised to file it. The time when the mortgage was handed to Coon is left in some uncertainty by the evidence. The plaintiff testified

that he thought he handed the mortgage to Head on the 19th, to be filed; that he thought the 19th was Friday, and that he sent his son the next day to the clerk's office, and that on the next Monday he handed the mortgage to Coon to be filed. [The 19th came in fact on Tuesday]. The clerk's office was about two and a half miles from the residence of *Swift*. On the 25th, Head sued out an attachment against Page, and on the same day the defendant *Hall*, as deputy sheriff, levied on the property covered by the mortgage. At the time of the levy of the attachment, Page told Head and *Hall* that he had given a mortgage to *Swift* upon the property in question. *Swift* was also present, and forbade their taking the property, telling them his mortgage was on file, and they replied that it was not. Head had just previously called at the clerk's office and requested to see the mortgage, and the clerk had told him that it was not on file; that *Swift* or his son had taken it. The next day *Swift* saw Coon, and ascertained from him that he had forgotten to leave the mortgage at the clerk's office, and caused it to be filed at six o'clock that afternoon. On the 27th of March, *Swift* withdrew the mortgage from the clerk's office (to show it to his lawyers, as he testified), and returned it again the afternoon of the next day. On the 3d of April, the property covered by the mortgage was sold under the attachment execution. For the taking and conversion of the property of *Hall*, this action was brought.

The court instructed the jury as follows:

"There are but two questions of fact for your consideration. First, Did the plaintiff direct his son to withdraw the mortgage from the town clerk's office? If he did, I think the defendant must have a verdict. If he did not, then, secondly: Did he use reasonable diligence to return it to the clerk's office? If he did not use such diligence, then, although you find that he did not direct his son to take it from the office, still the defendant must have a verdict. But if the plaintiff did not direct

his son to take the mortgage from the office, and if, when he learned that his son had taken it therefrom, he used reasonable diligence to return it thereto, then the plaintiff must have a verdict. Reasonable diligence is such as a man of ordinary caution and prudence usually exercises in the management of his own affairs." The defendant asked instructions to the effect: 1st. That if the mortgage was withdrawn from the town clerk's office without the plaintiff's authority, its absence from the files at the time of the service of the attachment (it still being in existence), invalidated it as against the attaching creditor. 2d. That if the plaintiff learned on the 19th of February that the mortgage had been withdrawn from the files, he was bound to use reasonable diligence to replace it, and was bound to have replaced it the next day. 3d. That if the plaintiff withdrew the mortgage from the clerk's office on the 26th of March, and kept it until next day, such withdrawal and keeping made it invalid as against the attaching creditor. These instructions were refused. Verdict and judgment for the plaintiff, and the defendant appealed.

*Isaac Rogers*, for appellant:

1. To file a chattel mortgage is not only to deposit it with the town clerk, but to leave it there. 13 Barb. 326. Knowledge that such a mortgage exists and is unpaid, does not preclude a creditor from availing himself of the objection that it has not been duly filed. 25 Barb. 484; 12 id. 667; 20 Wis. 398; 3 id. 221. As to the effect of withdrawing and re-filing, see 12 Barb. 530. 2. If such a mortgage is withdrawn from the files without authority, and a third person in the meantime secures a lien on the mortgaged property, the sole remedy of the mortgagee is against the person who divested him of his prior lien by the wrongful withdrawal. When the attaching creditor learned from the clerk that *Swift* had no mortgage on file, his inquiries were at an end, and it is immaterial that *Swift's* son had no authority to withdraw the mortgage. If

the law were otherwise, the creditor would be bound to seek the mortgagee and *inquire* of him whether or not the mortgage had been withdrawn by his authority. 3. *Swift's* son believed that his father wanted the mortgage brought home, and therefore took it from the files. Third persons had a right to regard him as his father's agent in that transaction. His act was within the scope of his employment. 4. When *Swift* found that his son had withdrawn the mortgage, he should have re-filed it that day or the next. He made Coon his agent to re-file it, and is responsible for his agent's negligence. 34 Barb. 249; 17 N. Y. 362; 7 id. 493. 5. On the 27th of March, while the defendant was in possession of the property by virtue of the execution, the plaintiff voluntarily withdrew the mortgage from the files, and did not return it till afternoon of the next day. During this withdrawal the lien of the execution rose into a first lien, if it was not such before.

*Conger & Sloan*, for respondent.

Dixon, C. J. Was the son who was sent to the clerk's office acting as the agent of the plaintiff, or within the scope of his authority, when he took the mortgage from the files? If he was, then his act was the act of the plaintiff, and the mortgage must be deemed to have been off the files with the plaintiff's assent. In that case the doctrine of *Single v. Phelps*, 20 Wis. 398, would seem to govern, and the plaintiff could not recover. On the other hand, if the son was not acting as the agent of his father, nor within the scope of his authority, his act in taking the mortgage was merely wrongful, and the father was no more bound by it than if the mortgage had been taken by a total stranger. In this case the rule of *Woodruff v. Phillip*, 10 Mich. 500, would be applicable, and the plaintiff would not lose his lien, especially as against a creditor of the mortgagor, or purchaser from him, who took the mortgaged property with full knowledge of the existence of the mortgage. The mort-

gage had been delivered by the plaintiff to Mr. Head to be by the latter deposited in the town clerk's office. The son was sent to the clerk's office to ascertain whether it had been so deposited by Mr. Head, and if not, he was to go to Mr. Head, and get it and put it on file. When he came to the office, he found that the mortgage had been filed according to his father's directions, and there his agency ceased. He had no authority, nor semblance of authority, for taking the mortgage from the office; and when he did so, though acting, no doubt, upon the belief that his father wished to have the mortgage taken home, he nevertheless committed a wrong, as much as if his business at the office had had no connection whatever with the mortgage. It was an act not authorized by the plaintiff, and done in violation of the law both by the son who received and the clerk who delivered the mortgage; and the question is, whether the plaintiff must suffer in consequence of it. On this question we fully agree with the Michigan court in saying, that a party is not to be deprived of his rights in this way. It is indeed a very plain proposition, that a person cannot lose his title to property by the unlawful act of another, done without his knowledge, and to which he has never given his assent. And particularly is this so, where the opposing claimant acquired his interest well knowing of the title which he thus seeks to subvert. The Michigan case was that of a purchaser from the mortgagor, who bought and paid for the property in good faith, supposing that there was no mortgage on file. He inquired at the clerk's office, and was informed by the clerk that the mortgage had been withdrawn. A memorandum to the same effect in a book kept in the office, was likewise shown to him. It turned out that the clerk was mistaken, and that the mortgage had been returned, and was then on file. In the suit between the purchaser and the mortgagee, for the property, it was held that the title of the mortgagee must prevail, for the reason that

Swift vs. Hall.

the entry by the clerk in the book, and his statement to the purchaser that the mortgage was not on file, were unauthorized acts, by which the rights of the mortgagee could not be affected. The rights of the mortgagee were secure so long as the mortgage was actually on file. The purchaser was bound to search the files, and acertain from them whether it was there or not. In that case the mortgage had been withdrawn by the mortgagee himself. It was observed by the court, that if the purchaser had called to see the mortgage when it was out of the office, or if the mortgagee had given his assent to the memorandum which misled the purchaser, a different question, possibly requiring a different decision, would have been presented, upon which the court declined to express an opinion. And in the present case, if the defendant had not been familiar with the transaction, the recent making and filing of the mortgage, or if, being ignorant of the manner in which it was withdrawn from the office, which it appears he was not, he had called at the office and learned that it was not on file, and then had attached the property, very different questions, requiring, it may be, a different decision, would have been presented; but of these it is unnecessary now to speak. It is enough that we are satisfied that the questions of fact, both as to the mode in which the mortgage was withdrawn and the diligence used by the plaintiff in returning it, were fairly submitted to the jury, and that the jury must have found that it was withdrawn without the plaintiff's assent, and that he was guilty of no laches in causing it to be returned to the files. As observed by the learned judge to the jury, these seem to have been the real questions at issue; and as they were fairly submitted, it follows that there was no error in refusing the instructions asked by the defendant, for which the verdict ought to be disturbed.

*By the Court.* — Judgment affirmed.