GRUNER vs. THE STAR PRINTING COMPANY OF FOND DU LAC.

CHATTEL MORTGAGE. *Sale of mortgaged chattels while mortgage withdrawn from the files.*

1. Plaintiff, having a mortgage from his partner W. of certain chattels belonging to the partnership, which was duly filed in the office of the clerk of a city, gave W. a written authority, without restriction, to withdraw such mortgage from the files and destroy it; and W. withdrew the mortgage from the files (filing with the clerk such written authority), and sold the property to defendant. *Held*, that defendant's title is not subject to the lien of the mortgage. *Swift v. Hall*, 23 Wis., 532, distinguished.
2. The fact that the terms of the sale to defendant were in violation of secret instructions given by plaintiff to W., will not affect the validity of such sale.

APPEAL from the Circuit Court for *Fond du Lac* County.

Replevin, for tools and implements constituting a book-bindery. It appears that on November 2, 1874, the plaintiff and one Weber were partners in managing the bookbindery, and on that day Weber executed and delivered to plaintiff a chattel mortgage upon the property in question, for $300, in the usual form, conditioned for the faithful performance of an agreement made by said parties in the month of July preceding. This agreement was in writing, and was for the formation of a conditional partnership. By its terms, plaintiff was to have the privilege of leaving the business at any time, for a period not exceeding one year, during which time Weber was to be allowed fourteen dollars per week for the management of the business, and the chattel mortgage was to be security for its proper management. It was further agreed that if the plaintiff elected, he could sell his share to Weber, and in that case the mortgage was to be security for payment.

The mortgage was filed in the city clerk's office, November 11, 1874, and was taken out by Weber, December 30, 1874, at which time he left in said office a certificate signed by the plaintiff, authorizing him to withdraw and destroy the mort-

gage. On January 1, 1875, Weber transferred the property in question to the defendant company, which went into operation as a corporation on that day. The property was taken by defendant as a part of its capital stock, and valued at $1,200, and, in consideration thereof, defendant issued to Weber sixteen shares of stock, and to the plaintiff eight shares. Plaintiff retained his shares of stock until the following July, when he offered to return them to defendant.

Weber testified that he received a letter from the plaintiff, stating on what conditions the property might be transferred to the defendant; and plaintiff offered to prove that the transfer was to be made only upon the conditions that the property should be sold into a good paying business, and that the plaintiff and Weber were to be employed in the business at weekly wages, having the entire control of the bookbindery; and that these facts were communicated to some of the members of the defendant company. This evidence was excluded, except so far as related to notice of the mortgage. Considerable other evidence relating to the instructions given by the plaintiff to Weber, and in respect to the value of the stock and the insolvency of the defendant, was offered by the plaintiff, and excluded.

The court directed a verdict for the defendant, and rendered judgment in his favor; from which the plaintiff appealed.

For the appellant, a brief was filed by *Priest & Carter*, and there was oral argument by *Mr. Priest*. They argued that the company was bound by the knowledge which Weber, one of its members, had of the existence of the mortgage, and of the conditions on which plaintiff consented to the transfer; that there was no evidence that plaintiff ever consented to a transfer, or received the stock, upon any other condition than that stated to Weber; that the sale, if any, was conditional, and no title passed. 15 Pick., 144; 26 Wis., 34; 2 Mass. Dig., 606, sec. 109, and cases cited. The conditions of the sale may be shown by parol. 10 Cush., 267; 13 Gray, 42; 15 id., 229.

*Edward S. Bragg*, for respondent:

The plaintiff must claim as a mortgagee, under a mortgage surrendered to the mortgagor, against parties who bought of the mortgagor for value and without notice; or else as a copartner with the defendant's grantor of the property, seeking to recover possession against the grantee of his copartner; and in neither case could he maintain the action.

COLE, J. The plaintiff's right to recover the property in dispute must rest entirely upon the chattel mortgage mentioned in the case. That instrument was the foundation of his title, and if it had ceased to be a lien when the defendant in good faith purchased the property, there could be no recovery. The controlling question then is, Was the mortgage a valid lien upon the property when Weber sold and transferred it to the defendant?

The evidence is conclusive that the mortgage was withdrawn from the office of the city clerk on the 30th of December, 1874, and that this was done by the express authority of the plaintiff. He gave written authority to Weber " to withdraw and destroy " the mortgage; and the case, therefore, is quite unlike that of *Swift v. Hall*, 23 Wis., 532. In that case the agent exceeded his authority in taking the mortgage from the files, and this court held that the lien was not thereby lost, it appearing that the mortgagee exercised due diligence in restoring the mortgage to the files. But here there is no ground for saying that Weber was not fully authorized to withdraw the mortgage from the files, or that he did not actually withdraw it before the sale of the property to the defendant was complete. The bill of sale bears date January 1, 1875, the day the defendant was legally organized or had an existence. As there can be no dispute about these facts upon the evidence, it must be held that the defendant took the property discharged of the lien created by the mortgage.

But it was claimed on the part of the plaintiff, and an

effort was made to show, that Weber's authority to withdraw and cancel the chattel mortgage, and to transfer the plaintiff's interest on a sale of the property to the defendant, was qualified or restricted by secret instructions contained in a letter. When the mortgage was delivered to Weber, the written authority to him to withdraw and cancel the mortgage was filed with the clerk, and that authority is not qualified by any restriction. It is absolute in its terms. If Weber violated his instructions in regard to the conditions upon which he was to sell the plaintiff's interest, this would not restore the lien of the mortgage. And besides, these conditions relate to the transfer of the plaintiff's interest to the defendant, not to the discharge of the mortgage. It is said that Weber was instructed to dispose of the property to the defendant only upon condition that the plaintiff and Weber were to be employed and have control of the bindery, and were not to be discharged without their consent. Now, it is said, the defendant has refused to employ the plaintiff according to that agreement. Conceding all this to be as claimed, how does it affect the question as to the lien of the mortgage? The lien of the mortgage was lost when the mortgage was taken from the files and destroyed by the authority of the plaintiff. It appears that this was partnership property belonging to Weber and the plaintiff. By the arrangement entered into, it was transferred to the defendant as so much capital stock. Certificates of stock were issued, and the plaintiff accepted his certificate and retained it until he returned from California in July. In view of these facts, it is a most extraordinary claim that he now makes, that the chattel mortgage is still in force. It seems to us that it has no foundation in law.

We think the judgment of the circuit court must be affirmed.

*By the Court.*—Judgment affirmed.