JANE D. ROGERS, Appellant, *v.* THOMAS DWIGHT, Respondent.

*Chattel mortgage — temporary removal of, from the town clerk's office, after its hav-
ing been duly filed — validity of the mortgage not affected, as against the person
causing its removal.*

When a chattel mortgage has been duly filed in the town clerk's office as required
by the statute (Laws of 1833, chap. 279, §§ 1 and 2), it will not be rendered
invalid, or the mortgagee be deprived of his rights thereunder, by the clerk's
omission to keep the mortgage in his office, as is made his duty by the statute,
as against a judgment creditor of the mortgagor who, having notice of the
mortgage, by his own act in issuing a subpœna *duces tecum* in proceedings sup-
plementary to execution, causes the mortgage to be temporarily removed from
the files and from the physical possession of the clerk by the mortgagee, in
obedience to the subpœna, without any intention of withdrawing or sup-
pressing the mortgage; and the judgment creditor of the mortgagor will not
acquire any rights in the mortgaged property, as against the mortgagee, by
causing a fresh execution under his judgment to be levied thereon while the
mortgage is so temporarily removed from the clerk's office.

APPEAL by the plaintiff, Jane D. Rogers, from a judgment of the
Supreme Court dismissing the complaint upon the merits, entered

in the office of the clerk of Chenango county on the 13th day of November, 1886, upon a verdict in favor of the defendant, rendered at the Chenango Circuit, and from an order denying the plaintiff's motion for a new trial made upon the minutes.

The plaintiff alleged that on the 3d of August, 1885, she was the owner of thirteen dairy cows of the value of $325, six yearling heifers of the value of ninety dollars, and two yearling bulls of the value of twenty dollars, and that the defendant on that day seized, carried away and converted the property to his use. In the defendant's answer it is alleged that on the 15th of December, 1884, one James O. Hammond, who then resided at Preston, Chenango county, owned the cows and personal property described in the complaint, and to secure an indebtedness to the defendant of about $1,000 "the said James O. Hammond duly sold and assigned the same to this defendant by a chattel mortgage, duly executed, as security for the payment of the said $1,000, payable on or before April 1st, 1886; * * * and that on the 17th day of December, 1884, this defendant caused the said chattel mortgage to be duly filed and entered in the town clerk's office of the said town of Preston," and that after the removal of the mortgagor and his wife to the town of Oxford with the said property "this defendant caused a copy of said chattel mortgage to be duly filed and entered in the office of the town clerk of the said town of Oxford. That the said chattel mortgage and the said copy respectively have since remained on file and duly entered in the said offices of the said town clerks of the said towns respectively." It is also alleged that thereafter the defendant seized the property under the chattel mortgage, sold the same at public auction, "and that on such sale this defendant became the purchaser of said property."

It is alleged that the plaintiff recovered a judgment against Hammond and issued an execution thereon, which was returned wholly unsatisfied, and that the plaintiff commenced supplementary proceedings against Hammond before the county judge of Chenango county, who appointed a referee to examine Hammond as to his property and take such evidence as might be produced, and the 12th day of June, 1885, was appointed for taking such evidence at Oxford. * * * That the plaintiff knew that defendant's mortgage was filed in the clerk's office, and that on or about the 11th day

of June, 1885, plaintiff and her attorney " caused a subpœna *duces tecum* to be issued and served upon this defendant commanding him under severe penalties to bring and produce the said chattel mortgage before the said referee on the said 12th day of June." \* \* \* That in pursuance of such subpœna the defendant, on the 12th of June, informed the clerk of such subpœna and obtained permission of him to take and produce said chattel mortgage before the referee " as his agent or deputy." \* \* \* " That on the 17th day of June, 1885, the said plaintiff and her said agent and attorney procured the sheriff to levy upon the said property by virtue of the said execution and well knowing that the said James O. Hammond did not own any interest therein." \* \* \* That the sheriff, on the 31st of July, 1885, at the request of the plaintiff, sold the property mentioned in the complaint, " the plaintiff assuming and pretending to become the purchaser thereof at the sale."

Upon the issues framed by the pleadings the question was presented at the trial whether the plaintiff was the owner of the property or whether the defendant was the owner thereof by virtue of his chattel mortgage and the foreclosure thereof and purchase thereunder. A verdict was rendered for the defendant. A motion was made for a new trial on the minutes and denied, an opinion being delivered by the trial judge. Judgment was entered for the defendant dismissing the plaintiff's complaint, and the plaintiff appealed from the judgment and the order denying a motion for a new trial.

*Samuel S. Stafford*, for the appellant.

*George W. Ray*, for the respondent.

HARDIN, P. J. :

Upon the trial the court submitted to the jury to find whether the defendant took his mortgage from the clerk's office with the intention and for the purpose of removing it from the files, and whether he took it to Oxford at the request and pursuant to the subpœna and request of the plaintiff. The court charged the jury that if he did not intend to remove it from the files, and took it to Oxford for use in court at the request of the plaintiff and in pur-

suance of her subpœna to produce it, intending to return it, and that if the defendant's delay in not returning it was occasioned by mistake or accident, the defendant was entitled to a verdict. When the defendant applied to the town clerk for a loan of the mortgage he made no avowal of any intention to withdraw the mortgage from the files of the clerk's office; on the contrary, he avowed that he had been subpœned to produce it, and that in obedience to the subpœna he desired the clerk to permit him to take the mortgage before the referee. He took it before the referee, and was examined in respect thereto, the plaintiff and her attorney having notice of the purpose for which it was presented, and of the contents of the mortgage. The defendant was a physician, and when he returned home his patients required his attention; and evidence was given tending to indicate that by mistake and accident he failed to return it to the clerk's office for a period of about four days; during that period the the plaintiff caused a fresh execution to be issued on the 16th of June, 1885, and the deputy sheriff who had returned the first execution, levied on the mortgaged property. As soon as the defendant learned of the levy he immediately returned his mortgage to the clerk's office. The plaintiff caused the property to be sold on the execution, and bid it in herself, her attorney being present at the sale, and acting as clerk. The following Monday the defendant took the property and sold it under his mortgage, and insisted upon the trial that as to this plaintiff the mortgage was on file all the time, and that the plaintiff could not be permitted to take advantage of her own act to deprive the defendant of his lien and rights under his mortgage.

Section 1 of chapter 279 of the Laws of 1833, relating to chattel mortgages, provides that a mortgage " shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed as directed in the succeeding section of this act." Defendant's mortgage was filed, and from that time it was, so far as the act relates to it, valid. It did not fall within the condemnation of the section from which the quotation has been made.

In *Griswold* v. *Sheldon* (4 N. Y. 599), it was said : " The object of filing the mortgage is to give notice of its existence to all persons who choose to inspect it, and when properly filed it is legal presumptive notice, binding on all persons interested." In the case

here the notice was given by the filing to the plaintiff, and she and her attorney had actual notice and knowledge of defendant's mortgage. The sheriff who returned the first execution presumptively did so upon the assumption that the mortgage was regularly on file, and was a valid lien upon the property in question. In the supplementary proceedings the plaintiff caused a subpœna *duces tecum* to be issued. Defendant's mortgage was referred to in that subpœna, and it was produced by the request and by the command of the plaintiff before the referee, from the clerk's office. A complete obedience to the subpœna could not take place without a temporary loan by the town clerk from his office of the instrument filed therein. All of the objects of the statute were fulfilled by the filing of the mortgage in the clerk's office. The filing thereof operated as notice to the plaintiff, and the evidence abundantly discloses that she had actual knowledge of the mortgage, and that it had been properly filed, which knowledge was made very apparent to her and her attorney on the 12th of June. On that day the defendant had a lien upon the property, and the plaintiff had full knowledge thereof upon that day, which notice and knowledge were possessed by the plaintiff and her attorney prior to the issuing of the second execution under which she caused the property to be levied upon and sold, and which she assumed to purchase at the sale. She ought not to profit by her act in causing the mortgage to be taken from the clerk's office. (*Trenton Bank. Co. v. Sherman,* 24 Alb. L. J. 390; S. C., 86 N. Y. 221.) The plaintiff did not part with any consideration; did not become a creditor while the mortgage was temporarily out of the office of the town clerk, on the faith that there was no lien upon the property; she was not misled by the fact that the instrument was temporarily removed from the clerk's office; she is not equitably entitled to the position that would have been held by a creditor whose debt was contracted while the instrument was temporarily out of the office. Again, the 2d section of the act of 1833 provides that the instrument mentioned in the 1st section shall be filed in the several town clerks' offices mentioned, and then provides, viz. : "And such register and clerks are hereby required to file all such instruments aforesaid presented to them respectively for that purpose, and to indorse thereon the time of receiving the same, and shall deposit the same in their respective offices, to be kept there for

the inspection of all persons interested." As we have already seen, the defendant filed his mortgage in the clerk's office, and thereby complied with the requirements of the statute. The statute required the clerk to file it; he did so, and he deposited the same in his office. It was his duty to keep the same there for "the inspection of all persons interested." The command of the statute is upon the clerk; the keeping is to be by the clerk; there is no duty laid in terms upon the mortgagee as to the keeping of it; there is no provision in this section declaring the clerk's failure to keep it fatal to its validity; there is no provision to the effect that if it be not "kept there" by the clerk that it shall be void. In *Bishop* v. *Cook* (13 Barb. 326), near the close of the opinion, it is said: "The party should not be deprived of his rights by the neglect of the officer." In *Dodge* v. *Potter* (18 Barb. 193, 202), it was said: "It was the duty of the town clerk and not of the mortgagee to number the mortgage. The rights of the mortgagee could not be impaired by the omission to perform that duty." The case is entirely destitute of evidence to indicate an intention on the part of the defendant to withdraw or suppress his mortgage. The evidence does indicate that it was the act of the plaintiff which caused the temporary removal of the mortgage from the physical possession of the clerk. Surely she ought not to profit by an act performed at her request under the command of her subpoena, which, at most, may be said to have interfered with the duty of the clerk to retain the mortgage in his office. It was her act which induced the clerk to part temporarily with the mortgage from the files. It appears the clerk was advised that it was in pursuance of the subpoena, and that the mortgage was only temporarily to be used before the referee for the purpose of complying with the tenor of the subpoena.

Our attention is called to *Fox* v. *Burns* (12 Barb. 677); in that case it appeared that the chattel mortgage was executed on the 15th of March, 1849, and "on the 18th or 19th of June, 1850, it was taken from the town clerk's office by the mortgagee," and in considering that case STRONG, J., observes: "The withdrawal of this mortgage from the clerk's office by the mortgagee, leaving the cow with the family of the mortgagor, would have invalidated the mortgage as against a subsequent purchaser, etc., in good faith, if it had not before ceased to be valid to that extent." We think the case is

quite distinguishable from the one before us. Evidently the language was used with reference to a voluntary, absolute, intentional removal of the mortgage from the file by the mortgagee, and it is to be observed that the expression used by the judge is that such removal " would have invalidated the mortgage as against a subsequent purchaser, etc., in good faith." In the case in hand, as we have already seen, the plaintiff had notice, had knowledge of the existence of the mortgage, and that it had been regularly filed, and was herself instrumental in the temporary loan of it by the clerk from his office. We think the case before us is quite unlike that one.

Our attention is called to *Swift* v. *Hart* (12 Barb. 530). We think that case is quite distinguishable from the one before us. The principal question decided in that case is unlike the one here; the remarks found in the opinion evidently relate to a voluntary withdrawal of the mortgage from the files with the intention to suspend the lien; and it was held that a second filing of a mortgage after an expiration of a year, accompanied with a statement of the amount due thereon is valid against an execution " not levied until after the second filing." We think nothing is to be found in the case sustaining the contention of the appellant. We think no error was committed in refusing to direct a verdict for the plaintiff, nor in refusing to set aside the verdict and the motion for a new trial made upon the minutes. (*Swift* v. *Hall*, 23 Wis. 532; Jones on Chattel Mortgages, § 269.)

The foregoing views, as well as those expressed in the opinion of MARTIN, J., delivered in the court below, lead us to sustain the verdict and the judgment rendered thereon.

MERWIN and PARKER, JJ., concurred.

Judgment and order affirmed, with costs.