1840.

Lee
*v.*
Huntoon and
another.

---

### LEE *v.* HUNTOON AND ANOTHER.

UNDER an order of reference for the appointment of a receiver, and the usual examination of a judgment debtor, upon a credit- or's bill, the master examined the debtor and witnesses. This was partly done before the answer of a co-defendant, an assignee, was filed, and finished before a replication was filed. The same solicitor had appeared for both defendants, and on the investiga- tion applied for leave to cross-examine the witnesses and the defendant, which was refused, *Held,* that upon such a proceed- ing the judgment debtor defendant has a right to cross-examine the witnesses produced ; and that his counsel may instruct and aid him in giving his own answers, but cannot examine him himself. (1 *Paige,* 122.)

That the depositions of the witnesses were clearly inadmissible to be read at the hearing against such co-defendant; being taken before the case was at issue as to him, and no consent, express or implied by his attending and cross-examining appearing, even if the latter would be sufficient without notice of the intent to use the depositions, given before the closing of the proofs.

*Held,* that the examination of the judgment debtor was also inad- missible against the assignee.

The declarations of a party to an instrument impeached for fraud, are not admissible when made subsequently to its execution, unless the fraudulent nature of the instrument is otherwise established. Where the impeachment is on the ground of a continued possession under the statute, the fact of such possession cannot be proven by the assignor nor by his declarations.

The cases as to declarations by a tenant in possession classed. They are those in which the declaration is to affect the party's own interest, or that of some one subsequently acquiring an interest under him. They do not dispense with the rule of proving *aliunde* fraud in the assignment.

The non-removal of articles, the subject of an assignment, is not decisive evidence of fraud. The control of the assignee may be as absolute on the premises, and the exclusion of the assignor as perfect, as in case of a removal.

Under the act of 1833, ch. 279, if a mortgage of personal property is duly recorded, a change of possession need not be made. Some dicta to the contrary questioned.

Although the mortgagee has neglected to file a new copy of the mortgage in the manner prescribed by the statute of 1833, that neglect will not vitiate a new mortgage for the same debt, and on the same property, if otherwise *bona fide.*

THIS cause arose upon a creditor's bill, and was brought to a hearing in February, 1840, and in March ensuing an opinion was delivered, in which the Assistant Vice-Chancellor came to the conclusion that the bill ought to be dismissed as to the defendant Sedgwick with costs, and that certain articles of small value belonging to Huntoon should be delivered to the receiver, and as to Huntoon and the complainant, neither party to have costs against the other. The case came on to be re-argued in April term, under circumstances explained in the opinion.

*Mr. Saxton,* for the complainant.

*Mr. Howe,* for the defendants.

THE ASSISTANT VICE-CHANCELLOR:—Upon the argument of this cause in February last, an objection was taken to the introduction of the examination of the defendant Huntoon and the testimony of certain witnesses before the master, because no notice had been given of an inten-

tion to use it pursuant to the 75th rule of the court. It was also objected that had such notice been given, the examination and depositions were inadmissible on other grounds. But as to the first objection, it was then agreed between the counsel that it should be waived, provided however, that an admission should be given, that the master refused the complainant's counsel permission to cross-examine the defendant Huntoon, or the witnesses then produced.

I suggested that this agreement should be reduced in writing, which however has not been done. The counsel who has conducted the cause from the beginning, was out of the city at the argument, and on his return, ascertaining that the opinion of the court was adverse to him, applied for a new argument. He was informed that this would be granted of course. He has been somewhat irregular in making a motion for such re-argument, and service of the papers upon the opposite solicitor was wholly useless. It was the intention to order a re-argument as of course. The counsel of the defendants suggested that it was a re-hearing, and that the proceeding was wholly irregular under the 113th rule. As there was no order entered, there could be no re-hearing, independent of the question whether I have any jurisdiction to grant one. It was merely a re-argument for my own satisfaction, and in deference to counsel. I however have, upon this re-argument, allowed the production of all orders and proceedings in the cause in exactly the same manner as they might have been used on the previous argument, although not then produced ; and I have permitted a certificate of the master to be laid before me showing that he had refused to allow the cross-examination of the defendant and the witnesses.

With the light afforded by these fresh documents, and the full argument given to the cause, I shall now examine it.

The bill was filed by a judgment creditor after execution returned, and is mainly for the purpose of obtaining relief against a mortgage of personal property, executed by

Huntoon to the defendant Sedgwick, before the recovery of the judgment. It was filed on the 13th December, 1838. Appearances were entered on the 28th day of December. On the 8th of January, 1839, an order was made without opposition, for the appointment of a receiver, and in addition to the usual provisions was this clause, " that the " property contained in the mortgage mentioned in the " bill from Luman Huntoon to Roderick Sedgwick, be de- " livered over to said receiver, to satisfy the complainant's " debt and costs in this cause."

On the 23d of February, an order confirming the masters report appointing a receiver, was entered.

On the 27th day of March, 1839, the answers of each of the defendants was filed. On the 26th of that month an order was made upon reading and filing affidavits, and on application of the solicitor of the defendants, that the order of reference should be modified, so far as it directed the property contained in the mortgage from Huntoon to Sedgwick, to be delivered to the receiver to satisfy the complainant's debt and costs, and that the mortgaged property remain where it then was, until further order. On the 4th day of April, 1839, replications were filed.

On the 21st of March, 1839, the examination of the defendant Huntoon, commenced before the master, under the order of reference of the 8th of January ; was continued on the 22d and 28th, and, except a few questions put on the 30th of the month, was then closed.

On the 26th of March, a witness (Charles Huntoon) was examined under the order. On the 20th, Edward Carrington, Peter Martin, and N. W. Saxton, were also examined by the complainant.

On the 28th of March, in pursuance of a summons, Huntoon appeared before the master with his counsel, and an assignment was tendered to him, which it appears he finally executed. At the examination of Carrington on the 30th of March, there is the following entry. " This " question is objected to by the counsel of the defendants, on " the ground that the defendant, Roderick Sedgwick, is " within reach of the summons of the master, and has not

" been called." The question was, whether he had ever had a conversation with Sedgwick, respecting the mortgage. The reply to that question is one of the proofs relied upon by the complainant.

The master has given a certificate, that on the examination of parties and witnesses under the order, the counsel for the defendant was not permitted to cross-examine the party or witnesses produced by the complainant, nor ask them any questions.

On the 25th day of June, 1839, an order was made, (opposed by the defendants' counsel,) that the order of the 26th of March be vacated, and that the defendants deliver to the receiver possession of the property mentioned in the mortgage to Sedgwick, or so much thereof as with any other property might be necessary to satisfy the complainant's debt and costs; that the receiver be at liberty to sell the property at public sale, and that he hold the proceeds of sale, as well as the proceeds of any other property in his hands, until the further order or decree of this court: the costs to abide the event of the suit.

On the 26th of June, a written consent was entered into by both defendants' that the property be sold at private sale for the sum of $400.

On the 6th day of August, 1839, the complainant's solicitor enters an order to produce witnesses; on the 20th of August, he gives notice of the examination of Charles Huntoon as a witness before the examiner for the 29th of August. No witness is produced on either side, and on the 15th of October, the complainant's solicitor enters an order to close proofs.

What reason induced the court to direct a sale of the property included in the mortgage does not appear. It is impossible to conclude that the order was meant as an absolute adjudication upon the rights of the parties. The counsel for the complainant insists that the vice-chancellor held the mortgage void; the counsel for the defendant says, that he expressly made the order without prejudice to the rights of the parties.

Looking as I do to the order only, I find no decision upon the merits. I regard it as merely provisional.

The question as to the admissibility of these papers in evidence is of great importance. It depends on different principles as respects the witnesses, and as respects the defendant Huntoon.

I cannot entertain a moment's doubt in rejecting the depositions of the witnesses. Here is testimony taken under an order for appointment of a receiver, and the usual inquiries under a creditor's bill; an order made and some testimony taken, before the answer of the chief defendant to be affected was filed, and the whole, before that answer was put in issue by a replication. The same solicitor indeed appeared for both parties; but this defendant was not summoned to attend the master, and the right of cross-examining was not allowed to the counsel of the defendant attending. I may notice that I look upon the application to cross-examine as made on behalf of Huntoon, and the master was perfectly right in refusing a cross-examination of him. (*Benson* v. *Le Roy*, 1 *Paige*, 122.) But I doubt as to the propriety of the decision with respect to the witnesses. The object of the examination of witnesses under this order is pointed out in *Fitzburgh* v. *Everingham*, (6 *Paige*, 30.) It is for the purpose of ascertaining whether there is any property in the hands of other persons, to which the receiver is entitled under the order, to enable him to take the necessary steps to recover such property from the persons in whose possession it is. Now a cross-examination might show, that the particular property did not belong to the debtor, and save the adoption of any measures.

Be that however as it may, it seems to me too glaring a violation of the rules of testimony to be for a moment harbored, that evidence thus taken under a special order, before even the cause was at issue as to the defendant in question, and in his absence, can be used against him.

It is said that this defendant could have called these witnesses or others to refute them, during the running of the rule to produce. But the defendant had also a right to depend upon his answer, and to demand that the com-

plainant should make out his case against him by legal and sufficient testimony.

It is again said that the defendants have noticed the cause for hearing on pleadings and proofs, and as there was no proofs but these before the master it is an admission of their competency. These proofs are proper against Huntoon; but as to Sedgwick, it would be a reproach to the court if such a slip should destroy his rights.

The more difficult question relates to the admissibility of Huntoon's examination. I shall not inquire whether he could be admitted as a witness upon a regular application, nor to what extent; because as a witness against Sedgwick he has never been proffered—because under the 73d rule, an affidavit and order was requisite to examine him—and because no cross-examination has ever taken place, nor could with propriety take place under the order upon which the master was acting. The party might indeed then have been examined and cross examined, by express consent of all concerned to treat his statements as evidence; but not otherwise.

What is contained in his examination is to be regarded as his admission in writing, and nothing more; and the question is whether such admissions are competent evidence against Sedgwick.

Nothing can be better settled than the doctrine, that the declarations of a grantor or assignor made subsequently to his transfer cannot be used to affect the rights of the grantee or assignee.

In *Phœnix* v. *Ingraham's assignees*, (5 *Johns. C. R.* 426, *in Error*,) for example, Justice Spencer says: "no "proposition can be clearer, than that the answer of one "defendant is not evidence for his co-defendant; and that "the declarations of a party to a sale and transfer, going to "destroy and take away the vested rights of another, cannot "*expost facto* work that consequence, nor be regarded as "evidence against the vendee or assignee."

In *Philip* v. *Eamer*, (1 *Esp.* 357,) in order to prove a bill of sale fraudulent, the plaintiff proposed to examine witnesses as to declarations made by the vendee; and it

was ruled that declarations made by him at the time of executing it were admissible, but not those at another time.

To these cases may be added *Doe* v. *Webber*, (1 *Adolph. & Ellis*, 740. *Hardin* v. *Baird*, 1 *Little Sel. Ca.* 340. *Arnold* v. *Bell*, 1 *Haywood*, 396, and *Gray* v. *Harrison*, 2 *ibid.* 292.)

But there is a class of cases establishing that if fraud is made out, the declarations of a party to that fraud, although subsequently made, are good testimony; and what bears more directly upon the present case is, that upon a question of fraud in a transfer of property, the declarations of the vendee, when in possession, are evidence against the vendor. The rule is thus stated by Justice Cowen. "The "possession," (which continued after the transfer,) "can "be considered as adequate evidence of a conspiracy be-"tween the vendor and vendee to defraud creditors, and "the admission of the debtor is let in as that of a co-con-"spirator." (2 *Cowen's Philips*, 602. See also p. 177.)

In addition to the cases cited by the learned judge, may be noticed that of *Askew* v. *Reynolds*, (1 *Dev. & Battell's Rep.* 367.)

Upon examining the authorities, and taking the rule as thus drawn from them in its greatest force, it is obvious that two things must concur, viz., proof of possession made *aliunde*, and the conclusion or presumption of law that the possession was fraudulent. It is, observes Justice Cowen, an essential preliminary, that the conspiracy be proven. (Vol. ii. p. 177, n. 180.) It is true that the declarations of a tenant in possession, are held evidence of the character of such possession. But these cases are of two classes; *first*, where the declaration is used to cut down the declarant's interest or claim; (*Corne* v. *Nichol*, 1 *Bingham's New Cases*, 430. *Chamberly* v. *Bernasconi*, 1 *Cr. & J.* 456.) And *next*, when it is used against those who claim under him. In all such cases the declarant must be in possession when the admissions are made, and they can be used only against himself, or those subsequently acquiring an interest under him. (*Jackson* v. *Bard*, 4 *Johns. Rep.*

230. *Jackson* v. *McCall*, 10 *Johns. Rep.* 377. *Doe* v. *Pettit*, 5 *B. & A.* 224. *Jackson* v. *McVey*, 15 *Johns. Rep.* 237.) Declarations of this nature characterize the possession, but are inadmissible as to title.

1840.

Lee
v.
Huntoon and another.

I consider, then, that such cases in no wise affect the rule that a fraud must in this instance be first established, before any statements contained in Huntoon's examination can be used against Sedgwick. And it will be sufficient to show, that the possession was continued in him unchanged, to make it so far fraudulent at law, as to let it in. But this must be otherwise proven. To hold that Huntoon's declarations alone can prove the possession as being unvaried, and hence prove the fraud, dispenses with every preliminary, and entirely annihilates the rule as to the inadmissibility of subsequent statements by an assignor. If, then, there is no proof of a continued possession, or the possession, if continued, can be supported as legal, the whole foundation of the admission fails.

With respect to the case of *Gibson* v. *Shaw*, (in 7th *Paige*,) the decision certainly does not support the claim of counsel to have the examination read against Sedgwick. The motion was to suppress the examination ; and made on behalf of both parties. The order denies that motion, and the chancellor observes, that nothing could be stronger against the examinant—being his own declarations on oath. The Chancellor adds, and this probably is the ground of the supposition of counsel, " that if the examination " tends, in any manner, alone or in connection with other " evidence which may be introduced at the hearing, to " show that the assignment from Shaw to Albert was " fraudulent, or to show that Albert is indebted to Shaw, " or has any property of the latter in his hands, the exhibit " cannot be rejected as irrelevant."

Still, from the whole opinion I gather only, that it was clearly proper evidence as against the examinant, and no decision that it was so as to the other defendant.

Then as there is no evidence in the cause which can be used against Sedgwick, the preliminary question of fraud must be tried upon his answer.

It appears that on the 11th of October, 1837, a mortgage was executed by the defendant Huntoon to the defendant Sedgwick upon certain property consisting chiefly of the machinery and implements connected with an iron foundry. On the 4th of October, 1838, another mortgage was executed upon the same or nearly the same property, and for securing the same amount. There was no new consideration.

The bill calls for an answer upon oath, and alleges that the possession of the property has not been changed. The defendant answers, that at the time of the execution of the mortgage he went and viewed the property; that it was of such a nature and so situated, as that a removal of it would be accompanied with great expense, great injury to it, and great deterioration of its value. That he received possession thereof from Huntoon and had the same entirely under his possession and control; that he concluded to leave the same upon the premises; and that Charles Huntoon was appointed his agent to act for and retain possession of the same, and have its care and management. That such property has continued in his possession ever since the execution of such mortgage; that he has sold and received the proceeds of a part thereof, and that this was after the execution of the second mortgage.

The defendant admits that Luman Huntoon continued to occupy one floor of the house on the premises where the property was situated.

He then states the execution of the second mortgage, and says, that the possession of the mortgaged property had continued in him from the time of the execution of the first mortgage; that he sold part without asking leave of, or consulting the said Luman Huntoon.

On these statements of the answer I apprehend this point of the cause must be decided.

I do not find it expressly decided that there must be an actual removal of personal property from the premises upon which it is situated at the time of the transfer. The statute does not in terms require it. It prescribes an immediate delivery, and an actual and continued change of

1840.

Lee
v.
Huntoon and
another.

possession. The question has in most of the leading cases turned upon the fact of the continuance of the possession by the mortgagor or vendor, and the exercise by him of the same or similar acts of ownership and control after the instrument, as before. Such was the case in *Paget* v. *Perchard*, 1 *Esp. R.* 205; in *Wordall* v. *Smith*, 1 *Camp.* 332; in *Butler* v. *Stodart*, in Error, December, 1838; in *Doane* v. *Eddy*, 16 *Wendell*, 554, and in *Randall* v. *Cook*, 17 *Wendell*, 54.

Now an immediate delivery and an actual and continued change of possession are consistent with the retention of the property on the same premises. Removal is an evidence, and a strong one, of that change—but not the indispensable evidence. The exercise of ownership and control by the assignee, and above all, the absence of any such control by the assignor, appears to me the true test by which to decide the validity of the transfer. Removal may be insufficient, because the control of the assignor may be afterwards resumed; and certainly the change of possession may be as entire and continued, and the exclusion of the assignor as absolute and unequivocal, without a removal as with it. All that the statute prescribes is, that the change should be notorious, and the possession and control of the assignee indisputable and unshared.

It must however be admitted that the language of judges in some of the cases favors the supposition that a removal is necessary. Thus in *Randall* v. *Cook*, (17 *Wendell*, 56,) Justice Bronson says: " Time may be necessary to remove " ponderous articles, growing crops, and the like; but " where the property is of such a nature that there may be " an immediate change of possession, that change must be " made, or the law will pronounce the transaction fraudu- " lent against creditors and purchasers." But he immediately before has observed: "There must be some good, " and sufficient reason such as the law will approve, for " leaving the property in the possession of the vendee."

In *Collins* v. *Brush*, (19 *Wendell*, 199,) the property consisted of certain timber, and two burr mill-stones, and they were allowed to remain upon the vendor's premises

from the date of the bill of sale in November, 1829, until March or April, 1830. The assignee had appointed an agent to take charge of the property, but he, by consent of the vendor, after piling the timber, left it on the premises near the mill of the vendor. In this situation of things execution was issued, and the bill of sale was held void. Here there was no act of ownership by the assignee, (except the trifling one of piling the timber,) and the property remained on premises of which the assignor was in actual exclusive possession.

But in the present case there is no admission of a single act of intervention with the property on the part of the assignor. He remained indeed in occupation of a part of the premises only ; but there is the explicit averment by the assignee that he himself took possession, employed an agent, and exercised acts of control over the property. It appears to me that no case has gone so far as to justify the overthrow of the mortgage on this ground.

It appears that some household furniture of a very trifling amount was included in the mortgage, and suffered to remain in Huntoon's possession. I cannot agree that an omission of this nature is sufficient to vitiate an instrument in other respects valid, made upon a fair consideration, and followed by a possession of all the property which was of moment.

But supposing this view erroneous, the statute of 1833 is to be considered in its bearing upon the case. By that act, (2 *R. S.* p. 71, 2d ed. *Laws* 1833, *ch.* 279,) every mortgage of goods and chattels, which shall not be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things mortgaged, shall be void, as against creditors, &c., unless the mortgage, or a true copy thereof, shall be filed as directed in the next section of the act.

In the case of *Wood* v. *Lowry*, (17 *Wendell*, 492,) a mortgage of a store of goods was executed on the 8th of May, 1834. The mortgage was filed in the clerk's office on the 19th of the same month. The mortgagor remained in actual possession, selling the goods as his own. After

declaring the mortgage void on this ground, the court held that the act of 1833 could not aid the plaintiffs. That it did not repeal the statute concerning fraudulent conveyances. " It only adds another to the grounds on which a " mortgage of personal chattels shall be void. If the " plaintiffs had omitted to file their mortgage, it would for " that cause have been absolutely void. If it was before " void on another ground, filing it could not make it " valid."

In *Sanger* v. *Eastwood*, (19 *Wendell*, 514,) there is a dictum to the same effect as in *Wood* v. *Lowry*, but it amounts to no more than a dictum, because as the purchaser had notice of the mortgage, he was held not entitled to impeach it. See also *Gregory* v. *Thomas*, (20 *Wendell*, 17.)

It is very clear that the decision in *Wood* v. *Lowry*, cannot be questioned ; because the invalidity of the mortgage was fixed by the want of delivery, and the filing did not take place until eleven days after the execution of the mortgage. Certainly that subsequent act could not remove the fraud.

But the case is very different where the filing takes place on the very day of the execution of the mortgage, as was done in this instance.

There are two propositions in the passage cited from the case of *Wood* v. *Lowry*, which may thus be stated. *First*, that a mortgage, even if accompanied with the most unequivocal delivery and continued change of possession, must yet be filed ; *next*, that filing, although immediate, is unavailing, unless the delivery and change takes place. But I cannot make these propositions consistent with the plain language of the statute. There seems to me but one construction admissible, *viz.* that the mortgage, which is not accompanied by delivery and followed by possession, must be filed. It is such a mortgage, and only such, which is required to be filed. Now if this is a necessary conclusion, then the converse of the proposition is also true. The mortgage, which *is* accompanied by delivery, and followed by possession, need not be filed. But the

act appears a useless mockery, if it prescribes a thing to be done or otherwise the security shall be void, when the very case in which the requisition is made, is the exact case in which the instrument is already void. Adopt the construction of the supreme court and the statute is this. A mortgage must be filed when, no delivery having been made, it is void; or else it shall be void.

But in my opinion the statute has provided a substitute by the publicity of a record, for the requisitions of the act of 1830, as to immediate delivery and continued possession. The converse of the proposition of the first section is in my opinion involved in it, and where the instrument is filed as directed, then the possession which under a mortgage is consistently retained by the mortgagor until the property is demanded, or at least until the debt is due, is no longer an evidence of fraud.

If so this mortgage, being filed as prescribed, was perfectly valid, even without the change of possession. It, however, undoubtedly expired and ceased to be valid against creditors in consequence of the neglect to file a copy of it with a statement as prescribed by the 3d section of the act of 1833. And it is objected that the second mortgage was merely a renewal of the first, and that it is void because of this omission.

It appears that the first mortgage was given on the 11th of October, 1837, and duly filed; the second on the 4th of October, 1838, and then filed. The judgment was recovered on the 4th of May, 1838, and execution issued on the 4th of November, 1838.

The property was the same with some unimportant variations. The amount is the same, and is sworn to be due in answer to a charge of the bill that the instrument was given without consideration.

By the 3d section of the act of 1833, (see 2 R. S. 2d ed. p. 71, § 11,) every mortgage filed pursuant to the act, shall cease to be valid as against creditors of the person making the same, after the expiration of one year from the filing thereof, unless within 30 days next preceding the expiration of the said term of one year, a true copy of such

mortgage, together with a statement exhibiting the interest of the mortgagee in the property thereby claimed by him, by virtue thereof, shall be again filed in the office of the clerk or register of the town where the mortgagor shall then reside.

The effect of this provision is, that publicity is given, not only to the fact of the existence of a lien upon the property, but of the extent and amount of that lien. Creditors or purchasers thus know what residuary interest remains in the mortgagor; and this information is given as of a date as near to the expiration of a year as is convenient, so that the true amount of the lien at the latest period is ascertainable. Instead, however, of filing such a copy and statement, the mortgagee in this case procures a new mortgage, which he files. In this, he ran the risk of an execution being put into the hands of the sheriff, after the first mortgage had become void by the expiration of the year, and before this new one was filed. But although the original mortgage ceases to be in operation in consequence of the omission, I do not see how the subsequent one, if otherwise valid, can be affected. Instead of the copy and statement coming from the mortgagee, there is a new instrument expressing the amount, coming from the mortgagor, or from both parties.

It has been strongly urged, that this is plainly a renewal of the old mortgage. It has the three distinguishing characteristics; the same parties, the same debt, and the same property. This is true; but the statute nowhere speaks of a renewal, but of a copy. This implies that the date should correspond, which, upon a renewal, would not be the case. Now, I consider that the statute has this meaning, and no other; that if the mortgagee would keep his security in force, and retain priority as of its original date, he must file the copy and the statement as prescribed. This is in his power, where the mortgagor will not or cannot give a new mortgage. But I cannot understand the act as prohibiting a fresh mortgage, to take effect from its date or filing, although the consideration and the property should be the same.

I have already noticed that the defendant avers a continued possession from the time of the first mortgage, and at the time of the second. And I think that looking at this mortgage as the only one ever made between the parties, it could be supported independently of the act of 1833. But if my construction of that act is right, it is wholly unassailable.

The mortgage, therefore, is unimpeached, and as the amount of the proceeds is admitted to be wholly insufficient to pay the debt, the bill as to Sedgwick must be dismissed, but without costs.

With respect to Huntoon, he swears that the whole amount of his furniture not exempt from execution, is not worth thirty dollars. There appears to be some trifling articles which the complainant is entitled to have applied. He can have an order for the delivery of such to the receiver. As between the complainant and Huntoon, each party must pay his own costs.