## NEWELL *vs.* WARNER.

The time prescribed by the statute, for the filing of a copy of a chattel
    mortgage, in order to keep the security in force, relates to the first filing
    of the mortgage, and is limited to a period of thirty days previous to
    the expiration of the term of one year from such first filing.

A filing before the commencement of the thirty days would be as nugatory
    as one after the expiration of that time.

Where a mortgage is sought to be kept on foot through a number of years,
    there must be successive filings annually, of the copies and statements, or
    the mortgage will cease to be valid, as against creditors and subsequent
    mortgagees and purchasers in good faith of the mortgagor.

Though the language of the statute might be satisfied with the filing of one
    copy only, in such a case, its obvious spirit, policy and meaning would not.

The statement of the interest of the mortgagee in the property claimed by
    him by virtue of the mortgage, which is required by the statute to be
    indorsed upon or accompany the copy of the mortgage filed, must be
    made by the mortgagee, in person or by attorney.

A mere statement of the amount due to the mortgagee, made by the mort-
    gagor or any third person, without any authority from the mortgagee, will
    not answer the requirement of the statute.

The indorsing a certificate or acknowledgment of the amount due, upon a
    copy of the mortgage filed, by the mortgagor, is not the execution of a
    new mortgage for the debt, in any just or reasonable sense.

ON the 16th of December, 1857, William H. Cheney exe-
cuted to the plaintiff a chattel mortgage upon the property
described in the schedule annexed to it. Cheney resided at
Rochester, and the chattel mortgage was filed in Monroe
county clerk's office on the 23rd February, 1858. The mort-
gage was given to secure notes which Cheney had given the
plaintiff, for borrowed money. The mortgaged property con-
tinued in the possession of Cheney, and included all his
household furniture, and had been and continued to be in
daily use by him and his family. The plaintiff was a sister
of Cheney's wife, and from 1847 was a member of his family,
except when absent as a nurse for his invalid son. At the
same time with the giving of the plaintiff's mortgage, Cheney
also executed to Mrs. Forbes a mortgage on the same property
to secure borrowed money, Mrs. Forbes being his sister-in-law.
Not long after the giving of these mortgages, Cheney, with

the consent of the plaintiff, sold to Darius Perrin the horses, carriage, democrat wagon, harness and pony, included in the mortgaged property, for $800, and that sum was paid upon Mrs. Forbes' mortgage, and the plaintiff released the property from her (the plaintiff's) mortgage. The whole mortgaged property was worth about $2000, and after applying the proceeds of the horses, &c., sold to Perrin, it left due on Mrs. Forbes' mortgage about $100. On the 17th February, 1859, a copy of the plaintff's mortgage was filed in the same clerk's office, with a certificate signed by her, showing her interest in the property. The same was again done January 30, 1860, and again January 11, 1861. On the 12th January, 1863, the defendant, sheriff of Monroe county, by virtue of an execution against Cheney, levied on certain articles of this mortgaged property, enumerated, worth $500 and upwards, and the plaintiff replevied it. On the trial the plaintiff offered in evidence a copy of said mortgage, and copy of schedule, and a copy of Mrs. Newell's certificate of January 11, 1861, all of which were filed January 8th, 1862; and also offered in evidence a certificate indorsed thereon and signed by W. H. Cheney. The defendant objected to the admission of the certificate of W. H. Cheney as evidence, on the general ground of its incompetency, and also because it was the statement of the mortgagor, and so not a compliance with the statute.. But the court overruled the objection, and the defendant excepted. The certificate indorsed on said copy was then read in evidence, and is as follows :

"I hereby certify that the same amount, as mentioned or certified to last year, dated January 11, 1861, is now due.
Rochester, January 8th, 1862.          W. H. CHENEY."

The plaintiff then offered in evidence a copy of said mortgage, and schedule filed January 9, 1863, and also a certificate thereon signed by W. H. Cheney. The defendant objected to the admission of said certificate, on the general

Newell *v.* Warner.

gound of its incompetency, and also because it was the statement of the mortgagor, and therefore not a compliance with the statute. But the objection was overruled, and the defendant excepted. The statement was then read in evidence, and is as follows:

"I hereby certify that the same am't as mentioned, or certified to last year, dated Jan'y 8th, is now due.

Rochester, Jan'y 9th 1863.        W. H. CHENEY."

It also appeared in evidence that the debts for which judgments had been recovered, as stated in the answer, and for the enforcement of which the executions referred to were issued to the defendant, were contracted by said William H. Cheney for goods sold him on credit prior to the execution of the first mortgage, and which credit also expired before the execution thereof.

At the close of the evidence the defendant asked the court to nonsuit the plaintiff, upon the following grounds: *First.* That the plaintiff had made out no cause of action *Second.* That the mortgage was absolutely void: (1.) Because it was not accompanied by a delivery of the property, or, (2.) Followed by any change of possession. (3.) Because it expressed upon its face, an intent to hinder, delay and defraud creditors; and a trust for the use of the mortgagor. (4.) Because of uncertainty in the description of the property transferred. (5.) By reason of the general language of description of property transferred, and the ambiguity caused by the words "except property exempt from levy and sale on execution." (6.) Because of uncertainty in description of debt intended to be secured. (7.) Because a copy of original mortgage was not filed in successive years within the time required by statute. (8.) Because with the copy filed in 1861, 1862 and 1863, respectively, there was no statement, as required by the statute; either made by mortgagee; or containing a true statement of her interest in the property; not showing amount due; or that

a portion had been released. But the court denied the motion.

The defendant excepted to the decision of the court. Some evidence was then given by the defendant, bearing upon the question of fraud in fact, and the defendant's counsel requested the court to direct the jury to find a verdict for the defendant, upon the following grounds, viz: *First.* Because the mortgage is void upon its face, by reason of the exception in regard to exempt property. *Second.* As upon its face expressing a trust for the use of the mortgagor. *Third.* For uncertainty in the property conveyed. *Fourth.* For uncertainty as to the debt intended to be secured. *Fifth.* As indicating an intent to hinder and delay creditors. *Sixth.* Because a copy was not filed in successive years, in pursuance of the statute. *Seventh.* Because on the copy filed in 1861, 1862 and 1863, there was no statement as required by the statute. (1.) Neither made by the mortgagee, nor, (2.) As containing a true statement of her interest in the property. *Eighth.* Because the possession was not changed, nor delivery of the property made, nor any excuse shown for not making such change of possession. *Ninth.* Because the statutory presumption of fraudulent intent has not been rebutted, nor any evidence given tending to show that the same was made in good faith, and without any intent to defraud creditors. *Tenth.* Because the plaintiff has shown no title to the property in question. The court declined to do as requested, and the defendant excepted.

The jury found a verdict for the plaintiff, and the court ordered the exceptions to be heard in the first instance at the general term, judgment in the meantime to be suspended.

*Jas. L. Angle,* for the plaintiff.

*Geo. F. Danforth,* for the defendant.

*By the Court,* JOHNSON, J. The property in question which was taken by the defendant, on the execution, and to

which the plaintiff claims title, consists of a piano, brussels carpets, sofas, damask curtains, and various other articles of household furniture belonging to a well and expensively furnished house, of the value of over $500.

The plaintiff claims title by virtue of a chattel mortgage executed to her, by Cheney, the judgment debtor, against whom the execution was issued. The clause in the mortgage constituting the sale and transfer is in these words : "I do hereby sell, transfer and assign to the said Esther M. Newell the property described in the annexed schedule, marked A, except such articles as are by law exempt from levy and sale under execution." It is shown by the evidence that this shedule A, which was annexed to the mortgage and formed part of it, contained all the household furniture, and all the personal property of which the mortgagor was possessed, and embraced the articles in question.

The defendant's counsel, amongst other things, asked for a nonsuit, in due time, on the ground that the mortgage was so uncertain in its description of the property attempted to be sold to the plaintiff that it was void and conveyed no title. He also asked the court to direct the jury to find a verdict for the defendant, on substantially the same ground. Both requests were denied and exceptions taken.

A chattel mortgage is an executed sale of property, which vests the title in the mortgagee until the terms upon which it may be defeated are complied with. And like all other sales of property, if the thing or things designed to be sold be not pointed out, described or identified, in some way, so that they can be distinguished and taken by the purchaser, without any further act, on the part of the seller, no title vests in such purchaser. The general rule is that the sale is not completed, so as to pass the property, so long as any thing remains to be done to identify it, or discriminate it from other things. (1 *Parsons on Cont.* 441. *Chitty on Cont.* 376.) The rule is well stated by Comstock, J. who delivered the opinion of the court in *Kimberly* v. *Patchin,*

(19 *N. Y. Rep.* 330.) At page 332 the learned judge says : "It is a rule asserted in many legal authorities, but which may quite as fitly be called a rule of reason and logic as of law, that in order to an executed sale so as to transfer a title from one party to another, the thing sold must be ascertained. This is a self evident truth when applied to those subjects of property which are distinguishable by their physical attributes from all other things and are therefore capable of exact identification. No person can be said to own a house or a picture, unless he is able to identify the chattel or specify what house or what picture it is that belongs to him." The rule is different where a definite portion or quantity is sold, from a larger quantity of property, like grain, one part of which can not be identified or distinguished from another part, and the intention of the parties is to pass the title, as was held in the case above cited. The articles attempted to be sold by the mortgage, are all articles capable of being identified and distinguished by their physical attributes or characteristics. But how many, and which of them, became the property of the plaintiff upon the execution and delivery of the mortgage? The instrument does not profess to convey all, but a part only. Which part does it transfer, and which reserve? In respect to the common articles of household furniture, it would be exceedingly difficult, and it seems to me utterly impossible, for any one to designate which passed to the plaintiff, and which were reserved to mortgagor. The mortgage does not specify nor furnish any means of selection, and the statute of exemption affords no criterion by which they could be distinguished. There has been no delivery by the mortgagors, and nothing whatever done by either party to the mortgage, by way of separation, or identification, of what was mortgaged or intended to be, and what was reserved from the sale.

But it has been held that a mortgage of *all the property* of a particular description in a certain store, is sufficiently

definite to transfer the title to such property then on hand. (*Gardner* v. *McEwen*, (19 *N. Y. Rep.* 123.)

And in respect to property sold or mortgaged by a schedule, with an exception similar to that contained in the mortgage in question, I am of the opinion that it is sufficiently definite and certain as to all the articles enumerated in the schedule, which necessarily or presumptively do not fall within the exception, to transfer the title to the purchaser or mortgagee. There are many articles of personal property in the schedule attached to the mortgage and forming a part of it, which presumptively, and in ordinary cases, clearly, would not come within the category of property exempt from levy and sale under execution. And this is obviously the case in respect to several of the articles taken by the defendant upon the execution. It is held in the case last above cited that a chattel mortgage may be good to transfer the title to a portion of the property contained in it, although void as to other portions it assumes to transfer. The mortgage in question was not therefore void, but valid at least as to a portion of the property in question, and the request to nonsuit and to direct a verdict on the ground specified, was properly denied.

The defendant's counsel also made a similar request for a nonsuit and direction to the jury to find a verdict on the ground that a copy of the mortgage had not been filed in successive years previous to the levy, within the time prescribed by statute. The mortgage was first filed February 23, 1858. A copy was filed with statement February 17, 1859; another copy and statement was filed January 30, 1860.. The next copy was filed with statement January 12, 1861. The next was filed January 8, 1862, and the last was filed January 9, 1863.

The statute provides that every mortgage filed in pursuance thereof, *shall cease to be valid* as against the creditors of the person making the same, after the expiration of one year from the filing thereof, unless within thirty days

next preceding the expiration of the said term of one year a true copy of such mortgage together with a statement exhibiting the interest of the mortgagee in the property thereby claimed by him, by virtue thereof, shall again be filed. The time for this filing, as the court I think correctly held, relates to the first filing of the mortgage, and is limited to a period of thirty days previous to the expiration of the term of one year from such first filing. A filing before the commencement of the thirty days would obviously be just as nugatory as one after the expiration of that time. And I have no doubt that where a mortgage is sought to be kept on foot through a number of years, there must be successive filings annually, of the copies and statements, or the mortgage will cease to be valid as against creditors, and subsequent mortgagees and purchasers in good faith of the mortgagor. This was held in *Nitchie* v. *Townsend*, (2 *Sand.* 299.) The language of the statute may perhaps be satisfied with the filing of one copy only, in such a case, as contended for by the plaintiff's counsel; but its obvious spirit, policy and meaning, would not. The plaintiff's counsel contends that any filing of a mortgage or a copy thereof, at any time, is effectual to revive and continue the validity of such mortgage within the year afterwards, whether made within the time prescribed by statute or not, within the decision in the case of *Swift* v. *Hart*, (12 *Barb.* 530.)

I do not see but this is so. It is true that that was the case of the original mortgage refiled after the expiration of the time prescribed by statute. But the statute makes the filing of a copy just as effectual as the filing of the original. And if we are at liberty to depart at all from the provision of the statute, it can make no difference whether the filing is earlier or later than the prescribed time. I dissented from the majority of the court in the case referred to, and am still entirely unable to see how it is that when the statute says in plain terms that unless a certain thing is done within a certain time, the mortgage shall cease to be valid, as

against creditors, its validity can be restored or continued by doing the thing at another and different time. I do not propose to argue this question over, but submit to the authority of the decision.

There is another question, however, upon which I think the learned judge at the circuit fell into an error; that is in regard to the certificate indorsed upon or accompanying the copy of the mortgage. The statute requires it to be "a statement exhibiting the interest of the mortgagee in the property thereby claimed by him by virtue thereof." That is by virtue of the mortgage. The first three copies annually filed, had the proper statement, signed by the mortgagee, filed with them. But last the two were not accompanied by any statement of the mortgagee whatever. All that appears is a certificate indorsed thereon, signed by the mortgagor, specifying that the same amount mentioned in the preceding year was due. The statute obviously contemplates a statement made by the mortgagee. It must exhibit the interest claimed by him in the property by virtue of the mortgage. A mere statement of the amount due to the mortgagee, made by the mortgagor or any third person, without any authority from such mortgagee, as these appear to have been, will not answer the requirement of the statute. It is the mere statement of a third person, and affords no evidence whatever of the interest claimed by the mortgagee in the property originally mortgaged, by virtue of the mortgage. It will hardly do to say that any person may go and file a copy of a mortgage and make this statement, and thus protect the property against the claims of creditors. We might as well dispense with the statute altogether. And the mortgagor who is in possession of the property, and interested to keep off creditors, is, I think, the last person who should be allowed to file the copy and make the statement. It may be doubted, I think, whether merely stating the amount due from the mortgagor to the mortgagee, is enough, even when made by the proper party. But it is unnecessary to pass

Newell *v.* Warner.

upon that here, because I am clearly of the opinion that the statement must be made by the mortgagee, in person or by attorney. It is the interest which he claims that is to be exhibited by it, and it must necessarily, as it seems to me, be made by him, or in his name, and by his authority; otherwise it might be made upon conjecture, or mere hearsay, for the express purpose of keeping creditors at bay. It seems equally clear to my mind that indorsing a certificate or acknowledgment of the amount due, upon a copy of the mortgage, by the mortgagor, is not the execution of a new mortgage for the debt, in any just or reasonable sense. It was obviously not intended to create a new mortgage, but merely to give the appearance of life to the old one, to the eyes of creditors, if possible.

My conclusion therefore is, that the mortgage had ceased to be valid, as against the execution in the defendant's hands, long before the levy was made, and was then invalid for the want of a proper statement. The objection to the mortgage on this ground was well taken, and should have been sustained.

A new trial must therefore be granted, with costs to abide the event. Upon the point in the opinion, that the mortgage is valid as to all the articles enumerated in the schedule attached to and forming part of the mortgage, which would not necessarily or presumptively fall within the exception of exempt property, my brethren express no opinion. Consequently that point in the case is not decided. In all other respects the opinion is concurred in.

[MONROE GENERAL TERM, September 5, 1865. *Johnson, E. Darwin Smith,* and *Jas. C. Smith,* Justices.]