## HENRY R. OSBORN, RESPONDENT, v. EDWARD P. ALEXANDER, APPELLANT.

*Execution — when the lien attaches from the time it is placed in the hands of the sheriff — when a subsequent mortgagee is not deemed a purchaser in good faith — Code of Civil Procedure, sec. 1409 — presumption of fraud arising from the property being left with the mortgagor.*

This action was brought to replevy certain articles of personal property sold to the plaintiff, on September 11, 1882, by a sheriff, at a sale under an execution issued upon a judgment recovered on March 25, 1880, against one Alexander. The execution was placed in the hands of the sheriff on July thirteenth, and the levy was made on August 19, 1882. One Beecher claimed title to the property under chattel mortgages given to him by Alexander, the first given in July, 1877, and a new mortgage, covering the same property and to secure the same indebtedness, executed and filed in each following year, the last of such renewals being given and filed on July 25, 1882.

*Held*, that Beecher was not " a purchaser in good faith," within the meaning of that term as used in section 1409 of the Code of Civil Procedure, and that the property was bound by the execution from the time it was placed in the hands of the sheriff.

That the facts were not sufficient to rebut the presumption, arising from the fact that the property was left in the hands of the mortgagor, that it was given to defraud his creditors. (Per FOLLETT, J.)

APPEAL by the defendant from a judgment of the County Court of Oneida county, reversing a judgment of a Justice's Court.

The plaintiff brought an action in replevin in a Justice's Court to recover certain personal property which was taken under the replevin papers. The defendant gave an undertaking and took the property back into his possession. The plaintiff claimed to own the property by virtue of a purchase at a sheriff's sale on an execution issued upon a judgment recovered by Marshall W. Barker on the 25th day of March, 1880, against Edward P. Alexander.

Execution on that judgment was placed in the hands of the sheriff of Oneida county on the 13th of July, 1882, and on the 19th of August, 1882, the sheriff levied upon the property and on September 11, 1882, the sheriff sold under the execution the property to the plaintiff in this action, the "sheriff announcing that he sold and conveyed the absolute title to said property," and " on said 11th day of September, 1882, after said sale, the said sheriff duly delivered the said property to the plaintiff herein." On the 11th day of September, 1882, after the said property had been delivered to the plaintiff herein by said sheriff, one Isaac Beecher, who had held several chattel mortgages on the property, " demanded possession of said property from plaintiff by virtue of said several mortgages, and possession thereof being refused said Beecher thereafter, by James McCabe, his duly authorized agent and attorney, forcibly seized said property from plaintiff and placed the same in the custody of the defendant herein for safe keeping, the said McCabe announcing at said time that he seized the same by virtue of the said several mortgages." On the 12th day of September, 1882, plaintiff duly demanded possession of said property from defendant Edward P. Alexander, in whose possession the property then was, but defendant refused to deliver the same.

There was a stipulation made in respect to the facts in the Justices' Court that the property, in 1877, was owned by defendant Alexander, who resided in the town of Kirkland, and continued in his possession from July 30, 1877, up to the time of sale, September 11, 1882, and was never seized under the mortgage by the mortgagee or his agent until said sale, and during said time was in the custody of no other person, except what might have been the custody of the sheriff by virtue of the execution hereinbefore mentioned. Barker's judgment was recovered " for money loaned to the defendant Alexander " about July 1, 1877.

By the stipulation it further appears that on the 30th day of July, 1877, the said defendant, for and in consideration of the sum of $3,000 duly paid, made, executed and delivered to Isaac Beecher a chattel mortgage upon said property, * * * a true copy of which was duly filed in the county clerk's office, in the town of Kirkland, on the 31st day of July, 1877. A mortgage upon the same property to secure the same indebtedness was executed and

filed in the months of June or July in each of the five following years, the last being executed and filed on July 25, 1882.

The Justices' Court rendered a judgment in favor of the defendant. Upon an appeal therefrom to the County Court a judgment was rendered in favor of the plaintiff, after a trial before the court without a jury, the County Court holding, as a matter of law, that the plaintiff was the owner of the property and entitled to the possession of the same. From the judgment thus rendered by the County Court the defendant appealed to this court.

*James E. McCabe,* for the appellant.

*W. T. Dunmore,* for the respondent.

Hardin, P. J. :

July 13, 1882, an execution on the Barker judgment was placed in the hands of the sheriff of Oneida county, within whose jurisdiction the property in question remained, and the property from that time was bound by the execution. (Code of Civ. Pro., § 1405.)

Section 1409 of the Code of Civil Procedure provides for exceptional cases, and declares, viz.: "The title to personal property acquired before the actual levy of an execution by a purchaser in good faith, and without notice that the execution has been issued, is not affected by an execution delivered, before the purchase was made, to an officer to be executed."

We are of the opinion that the purchaser in good faith and without notice, named in the section from which we have just quoted, is one who has parted with fresh consideration, and that a creditor who takes a security for an antecedent indebtedness, without surrendering anything, is not protected by the exception declared by section 1409 to the rule laid down in section 1405. Beecher, when he took the last chattel mortgage which was executed by the mortgagor, after the execution was in the hands of the sheriff, and filed after the execution was issued, was not a purchaser in good faith so as to come within the protection declared in section 1409 of the Code. ( *Williams* v. *Shelly,* 37 N. Y., 375 ; *Van Heusen* v. *Radcliff,* 17 id., 580 ; *Wood* v. *Robinson,* 22 id., 567 ; *Cary* v. *White,* 52 id., 138 ; *Farrington* v. *Frankfort Bank,* 24 Barb., 554 ; *Weaver* v. *Barden,* 49 N. Y., 286 ; *Ray* v. *Birdseye,* 5 Denio, 619.)

There was no evidence before the trial court that Beecher had surrendered and delivered up any security or evidence of debt, which he held, from the mortgagor at the time that he received the last mortgage.

We are not at liberty to indulge in any presumption that the prior mortgages were satisfied or surrendered at the time of the execution and delivery of the last named mortgage. (*Cary* v. *White*, 52 N. Y., 144.) The lien which the sheriff acquired in July, 1882, upon the property in question was enforced by means of the levy in August, thereafter, and a sale had by virtue of the execution which came into the hands of the sheriff, as we have seen, prior to the execution of the last named mortgage. Confessedly the last named mortgage was executed, delivered and filed after the lien of the execution attached to the property on the thirteenth of July, inasmuch as the mortgage was not executed until the twenty-fifth day, and filed on the 25th day of July, 1882.

This case, therefore, differs from *Lee* v. *Huntoon and another* (1 Hoff. Ch., 447). By reference to the opinion in that case it appears, viz. : That the first mortgage was given on the 11th of October, 1837, and duly filed ; the second on the 4th of October, 1838, and then filed. The judgment was recovered on the 4th of May, 1838, and *execution issued on the 4th of November*, 1838.

After discussing the provisions of the third section of the act of 1833, the assistant vice-chancellor remarks, viz.: " Instead, however, of filing such a copy and statement, the mortgagee in this case procures a new mortgage which he files. In this he ran the risk of an execution being put into the hands of the sheriff, after the first mortgage had become void by the expiration of the year, and before this new one was filed. But although the original mortgage ceases to be in operation in consequence of the omission, I do not see how the subsequent one, if otherwise valid, can be affected. Instead of the copy and statement coming from the mortgagee, there is a new instrument expressing the amount coming from the mortgagor, or from both parties. * * * Now, I consider that the statute has this meaning, and no other ; that if the mortgagee would keep his security in force and retain priority as of its original date, he must file the copy and statement as prescribed. This is in his power where the mortgagor will not or cannot give a new mortgage. But

I cannot understand the act as prohibiting a fresh mortgage to take effect *from its date or filing*, although the consideration and the property should be the same."

The doctrine in that case met with approval of the Court of Appeals in *Walker* v. *Henry* (85 N. Y., 134), where Judge MILLER says, viz. : " The giving of a new mortgage, instead of refiling and renewing the same, did not affect the lien of the mortgagee, or render it invalid except that the mortgagee ran the risk of a levy upon an execution after the first mortgage ceased to be a lien and before a new one was filed. (*Lee* v. *Huntoon*, 1 Hoff. Ch., 447.) The second mortgage did not extinguish the debt. (*Gregory* v. *Thomas*, 20 Wend., 17 ; *Hill* v. *Beebe*, 3 Kern., 556.) It was clearly valid except as against a levy upon an execution issued upon a judgment or a lien by virtue of such execution."

In the case last quoted from it was held that after the return day of the execution without a levy, all claim to a lien is lost, and therefore a receiver who sought to make title against an intervening mortgagee under virtue of the lien acquired by an execution which had been placed in the hands of the sheriff failed, as the execution had been returned without a levy before the action was instituted by the receiver. That case differs from the one before us because here the levy was made in the lifetime of the execution, and a sale had in pursuance of the levy.

Appellant calls our attention to *Swift* v. *Hart* (12 Barb., 530), which we think does not support his contention. WELLES, P. J., who delivered the prevailing opinion in that case, after alluding to the statute in respect to chattel mortgages, and the provision therein declaring that a mortgage shall cease to be a lien after one year, unless a copy and a statement of the amount due shall be made by the creditor or mortgagee, adds, viz. : " And although, from the expiration of the year it becomes dormant and invalid as against creditors and purchasers, yet upon filing it again it becomes revived and valid as against such creditors and purchasers, *whose liens had not attached during the interval*, on the same principle that an execution against personal property, which has become dormant by reason of the plaintiff's having directed proceedings to be stayed, may be afterwards revived and receive vitality by being set in motion by the plaintiff, so as to be effectual as against subsequent

executions," and adds, viz.: "Upon the whole, I am of the opinion that the second filing of the mortgage in this case may be regarded in the light of an original filing at that time." In that case it appeared that the second filing was on the 1st of February, 1848, and the execution was not received by the sheriff until the 7th day of April, 1848.

In *Newell* v. *Warner* (44 Barb., 258), Judge JOHNSON, who dissented in *Swift* v. *Hart*, delivered the opinion of the court and acquiesced in the doctrine laid down by WELLES, P. J., and his opinion in *Newell* v. *Warner* is to the following effect, viz.: "Where a mortgage is sought to be kept on foot through a number of years, there must be successive filings annually of the copies and statements or the mortgage will cease to be valid as against creditors, and subsequent mortgagees and purchasers in good faith of the mortgagor." The statement of the interest of the mortgagee in the property claimed by him by virtue of the mortgage, which is required by the statute to be indorsed upon or accompany the copy of the mortgage filed, must be made by the mortgagee in person or by attorney.

A mere statement of the amount due to the mortgagee, made by the mortgagor or any third person, without any authority from the mortgagee, will not answer the requirement of the statute. The indorsing a certificate or acknowledgment of the amount due upon a copy of the mortgage filed by the mortgagor, is not the execution of a new mortgage for the debt in any just or reasonable sense.

We do not understand *Smith* v. *Cooper* (22 Hun, 11) to lay down any rule inconsistent with *Newell* v. *Warner*. BARNARD, P. J., says that the paper signed by the mortgagor had the effect of creating a new mortgage. In that case it appears, viz.: "The sheriff levied upon the property in question after this re-executed mortgage was filed in March, 1879."

In *Nixon* v. *Stanly* (33 Hun, 248) it appears from the opinion of BARKER, J., that the refiling of the mortgage, with the proper certificate indorsed thereon, was "prior to the receipt of the execution by the sheriff," and that case, therefore, is consistent with the others to which we have referred.

The same principle is laid down by FOLGER, J., in *Marsden* v. *Cornell* (62 N. Y., 219), where he says, viz.: "So, the second year,

it must be accompanied with a statement of just the amount still unpaid, so that it may appear what has been paid, if anything, or whether the debt has increased by the interest upon it. It is a fraud (or at least a badge of fraud) if this be not stated truly. (*Ely* v. *Carnley*, 19 N. Y., 496.) It is a violation of the statute if it be not stated at all, which is not cured by the reiteration of the original statement of amount, by a refiling of barely the original mortgage."

Beecher's misfortune comes upon him because he did not follow in the course pointed out by the statute. That provided for a continuation of his lien, if he, within thirty days next preceding the expiration of his mortgage, should file a statement with the clerk indicating the amount remaining due upon his mortgage. Where the statute provides one mode for protecting a party, or his rights, under it, that mode must be pursued, in order to avail of the protective provision of the statute. (*Dudley* v. *Mayhew* 3 N. Y., 1.) Instead thereof, he pursued a course not provided for by the terms of the statute. He exposed himself to the risk of an intervening lien. That lien was followed by a levy and sale, and the purchaser at the sheriff's sale stands in the shoes of the judgment creditor. The purchaser at the sheriff's sale acquires the rights of the judgment creditor in the premises, and it is no answer to the rights of the purchaser at the sheriff's sale to show that the judgment creditor, or his assignee holding the judgment, had knowledge on the 25th of February, 1881, " of the said several mortgages of the said Isaac Beecher." (*Best* v. *Staple*, 61 N.Y., 71 ; opinion of EARL, C., at p. 79.)

Having reached the conclusion that the plaintiff acquired good title to the property in question, and that the defendant, as the agent of the mortgagee, was not entitled to withhold the same from the plaintiff's possession, we are of the opinion that the judment of the court below is correct.

Judgment of the County Court of Oneida county affirmed, with costs.

BOARDMAN, J., concurred ; FOLLETT, J., concurred in the result.

FOLLETT, J. :

A mortgage upon chattels which are left in possession of the mortgagor is presumed to be fraudulent as against an execution creditor. (2 R. S., 136, § 5.) As against such a creditor a person claiming title under such a mortgage must rebut the presumption

. of fraud by showing that the mortgage was made in good faith, without any intent to defraud the creditors of, or purchasers from, the mortgagor. (2 R. S., 136, § 5; *Smith* v. *Acker*, 23 Wend., 653; *Groat* v. *Rees*, 20 Barb., 26; *Miller* v. *Lockwood*, 32 N. Y., 293, 298; *Frost* v. *Mott*, 34 id., 253.) The facts of this case were agreed upon, and no facts are stated tending to rebut the statutory presumption. Six successive mortgages were given, each to secure $3,000, payable one year after its date with interest, on chattels worth less than $1,000, which were left in possession of the mortgagor. But sixty-five dollars has been paid on the alleged indebtedness. The case does not show that the mortgagor was originally or at any time justly indebted to the mortgagee in the sum of $3,000. The recitals of indebtedness in the mortgages are not evidence of the fact as between the execution creditor and the defendant. Even though the recited consideration existed, if the mortgages were kept on foot to protect the property from the mortgagor's creditors, and not for the security of the mortgagee, they are void as against the execution creditor. (*Billings* v. *Sawyer*, 3 Eastern R., 850; reversing S. C., *sub nom. Billings* v. *Billings*, 31 Hun, 65.) The mortgagee is the uncle of the mortgagor. There is no finding on the question of good faith. Under such a state of facts the statutory presumption is not rebutted, but is confirmed.

The judgment should be affirmed, with costs.

Judgment of the County Court of Oneida county reversing a Justice's Court judgment affirmed, with costs.